901 F.2d 1022
 134 L.R.R.M. (BNA) 2375, 115 Lab.Cas. P 10,059
 James MARKHAM, Dewey Tyler, Thomas Smith, John Greathouse,
Fletcher Joiner, Fred Herring, Daniel Chasteen and Local No.
272 of the International Association of Bridge, Structural
and Ornamental Iron Workers, Plaintiffs-Appellees,
v.
INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND
ORNAMENTAL IRON WORKERS, Juel D. Drake, Jake West, James J.
Willis, Billy Joe Walker, Billy Ray Conner, The Southeastern
States District Council of Iron Workers, Defendants-Appellants.
James MARKHAM, Dewey Tyler, Thomas Smith, John Greathouse,
Fletcher Joiner, Fred Herring, Daniel Chasteen and Local No.
272 of The International Association of Bridge, Iron
Workers, Plaintiffs-Appellees, Cross-Appellants,
v.
INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND
ORNAMENTAL IRON WORKERS, Juel D. Drake, Jake West, James J.
Willis, Billie Joe Walker, Billie Ray Conner, and The
Southeastern District Council of Iron Workers,
Cross-Appellees, Defendants-Appellants.
 Nos. 88-5586, 88-6166.
 United States Court of Appeals,
Eleventh Circuit.
 May 22, 1990.
 
 Jane W. Moscowitz, Steel Hector & Davis, Miami, Fla., Victor John Van Bourg, Sandra Rae Benson, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for defendants-appellants.
 Ira J. Kurzban, Kurzban, Kurzban & Weinger, Miami, Fla., for plaintiffs-appellees.
 Appeals from the United States District Court for the Southern District of Florida.
 Before JOHNSON, Circuit Judge, HILL* and HENLEY**, Senior Circuit Judges.
 HILL, Senior Circuit Judge:
 
 
 1
 This case involves a dispute between a local union and its international association. The Appellees and cross-appellants in this action consist of certain members and former officers of Local 272 of the International Association of Bridge, Structural and Ornamental Iron Workers, as well as Local 272 itself as a separate entity. Together this group (hereafter referred to collectively as "Local 272") brought an action against the International Association of Bridge, Structural and Ornamental Iron Workers ("the International") and other officers and organizers of the International, challenging the validity of the International's decision to impose a trusteeship on the local union. This appeal concerns only the validity of district court's decision regarding an award of attorney's fees to the plaintiffs in the underlying case.
 
 
 2
 Local 272 exercises jurisdiction over unionized iron workers in a four county area in south Florida, which includes the Miami area. Local 272 is a subordinate body of the International. Over the past three years there has been extensive friction between most of the members of Local 272 and the general executive board of the International, as well as between local members and the Southeastern District Council ("District Council") of the union. Most of these disagreements concerned whether Local 272 would be permitted to negotiate local contracts with its employers/contractors or whether the local union members would be required to accept a collective bargaining agreement negotiated on their behalf by the International's general executive board and the District Council. The latter two bodies preferred a district wide agreement covering the local unions of several southeastern states, or at a minimum a state-wide Florida agreement.
 
 
 3
 The events generating this litigation took place during 1987. In December of 1986 a new group of officers and executive committee members were voted into office by the members of Local 272. This new slate of officers had campaigned on a platform of adamant opposition to a collective bargaining agreement negotiated by the International's District Council. When this new group took office on January 2, 1987, they were informed that a collective bargaining agreement had ostensibly already been negotiated by the District Council, and that the International purported to bind Local 272 to that collective bargaining agreement.
 
 
 4
 A series of internal struggles and legal battles involving the union, area employers and the National Labor Relations Board then ensued, seeking to either challenge or enforce the District Council's collective bargaining agreement. These skirmishes continued late into the summer of 1987, and substantially interfered with the efforts of Local 272's members to operate under a collective bargaining agreement.
 
 
 5
 On November 3, 1987, the General Executive Board of the International issued a letter to Local 272 stating that it would be placed under the International's supervision pursuant to the union's constitution. The letter justified this action on grounds that the local union had failed to abide by its collective bargaining agreement; had failed to meet because of lack of a quorum; that several meetings had been adjourned because of physical altercations; and that the money in Local 272's treasury was being seriously depleted. The letter also stated that an internal union hearing would be held on January 5, 1988, regarding the imposition of the trusteeship, in which all Local 272 members in good standing would be allowed to participate. Pursuant to imposition of the trusteeship all regular meetings of local 272 were suspended and control handed over to a specially appointed administrator.
 
 
 6
 On December 18, 1987, the controversy entered federal court when Local 272 filed a motion for a temporary restraining order and preliminary injunction to dissolve the trusteeship. The hearing date for the injunction, originally scheduled for December 28, 1987, was subsequently changed to January 12, 1988, and the date for the internal union hearing regarding the imposition of the trusteeship was continued to January 26th.
 
 
 7
 On December 29, 30, and 31, 1987, and January 12 and 13, 1988, the district court held evidentiary hearings on an expedited basis. Based on the evidence introduced at these hearings, the district court issued an order on February 1, 1988, granting Local 272's motion for a preliminary injunction temporarily dissolving the trusteeship until an internal union hearing could be held. In issuing the injunction, the court specifically determined that there was no emergency requiring imposition of the trusteeship prior to a hearing, and that there was no evidence of bad faith on the part of the International in imposing the trusteeship. The court also concluded that Local 272 had demonstrated a strong likelihood that they would prevail in their position that the trusteeship was causing harm to Local 272 pending the final outcome of Local 272's challenge to the trusteeship, because the International had demonstrated an ability to bind Local 272 to long term agreements which were not acceptable to the local membership, and that this threat to the union's democratic process outweighed the present and future injury of continued financial deterioration of Local 272.
 
 
 8
 For the purpose of this appeal it is important to note that in issuing the preliminary injunction the district court did not base its ruling on Local 272's demonstrated ability to succeed on the merits of its claim that the trusteeship was unjustified. Instead, the court issued the injunction on the much narrower basis of Local 272's claim that, in the absence of an emergency, a trusteeship should not be imposed prior to a full and fair hearing. In so holding, the district court primarily relied upon two cases outside this circuit, Local Union 13410, United Mine Workers v. United Mine Workers, 475 F.2d 906 (D.C.Cir.1973), and Retail Clerks Union Local 770 v. Retail Clerks International Association, 479 F.2d 54 (9th Cir.1973). In these two cases, the District of Columbia and Ninth Circuits respectively adopted the "bright line" rule that a trusteeship should never be imposed prior to a hearing "absent a reasonable belief in the necessity for immediate action," Retail Clerks Union Local 770 v. Retail Clerks International, 479 F.2d at 55. Guided by these cases, and finding no emergency justifying an emergency trusteeship prior to the scheduled internal union hearing, the district court dissolved the International's trusteeship.[1]
 
 
 9
 Once the district court had issued the preliminary injunction, the union hearing was held on February 10, 1988. After this hearing, which the district court subsequently concluded was "scrupulously fair," a decision was made unanimously by the officers of the International to place Local 272 under supervision once again. The officers based this decision on the evidence obtained at the hearing, including their findings that the collective bargaining process had broken down to the point where less than 5% of the iron work in Local 272's jurisdiction was performed by members of the local pursuant to a union contract. In addition, the failure to negotiate a collective bargaining agreement had placed Local 272 in a precarious financial position, and that the situation was exacerbated by the mismanagement of union by local officers. Based on these findings a "second" trusteeship was imposed on Local 272 effective February 15, 1988.
 
 
 10
 Local 272 then challenged the validity of this second trusteeship by way of an amendment to the original complaint. Hearings on the merits of this renewed challenge were held by the district court in June of 1988. At this juncture, however, the court declined to dissolve the trusteeship. The district court found that all of the procedural requirements of a fair hearing had been met, including prior notice of the date and nature of the hearing, the opportunity to present evidence and witnesses in support of the reasons for imposing trusteeship, an opportunity for cross-examination, and the opportunity to present evidence in rebuttal. Finding that the hearing was "scrupulously fair," the court determined that under the Labor Management Reporting and Disclosure Act ("LMRDA"), the second trusteeship imposed on Local 272 was entitled to a statutory presumption of validity. See 29 U.S.C. Sec. 464(c)[2]. The court thus determined that the only legal issue to be resolved was whether Local 272 had overcome this presumption by demonstrating through clear and convincing evidence that the trusteeship was not imposed in good faith for a statutorily permissible purpose under Title III of LMRDA, 29 U.S.C. Sec. 462.[3]
 
 
 11
 The court concluded that Local 272 had not met the burden of demonstrating that the trusteeship had been imposed in bad faith. The court specifically determined that there was an acute financial crisis, and that Local 272 was no longer a viable labor organization capable of adequately representing its members in the marketplace. Nor did the court determine that the International imposed a trusteeship for an improper purpose.[4] The court therefore dissolved its preliminary injunction, denied Local 272's request to dissolve the trusteeship, and dismissed the complaint.
 
 
 12
 By separate order, the court granted Local 272's motion for award of attorney's fees incurred in obtaining the original preliminary injunction. However, the court concluded, without elaboration, that the 269.70 hours claimed by plaintiff's counsel for time spent on the preliminary injunction was far in excess of a reasonable period of time which should be allotted for preparation and handling of the motion. The court therefore based its award on a rate of $150.00 per hour for 100 hours, for a total of $15,000, plus costs, to be paid by "the defendants."
 
 
 13
 The district court's order regarding attorney's fees is the only subject of this appeal. The International appeals the award of any attorney's fees on grounds that Local 272 was not a prevailing party, and alternatively argues that such an award should be assessed only against the local union, not the International or other defendants in the original action. Local 272 challenges the district court's reduction of the amount of the award requested, on grounds that the district court did not sufficiently justify its reduction of the hours claimed.[5]
 
 
 14
 We begin by noting that the section of LMRDA under which Local 272 sued the International does authorize actions by individual union members to enforce the trusteeship provisions of that act. The statute does not specifically provide for recovery of attorney's fees. See 29 U.S.C. Sec. 464(a). However, attorney's fees are available under the "common benefit" doctrine espoused in Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). In Hall, the Supreme Court approved a fee award to a union member who had successfully sued his union to enforce his rights to freedom of speech under Title I of LMRDA, 29 U.S.C. Sec. 412. The Court endorsed such fee-shifting on the theory that every member of the union benefitted from the results achieved by the private litigant. 412 U.S. at 5-6, 93 S.Ct. at 1946-1947.
 
 
 15
 Following Hall, the Former Fifth Circuit Court of Appeals subsequently applied the "common benefit" theory to suits brought under the trusteeship provisions of LMRDA, 29 U.S.C. Sec. 462 et seq. In McDonald v. Oliver, 525 F.2d 1217 (5th Cir.), cert. den'd., 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976), the Former Fifth Circuit determined that an award of attorney's fees to a private litigant for successfully challenging imposition of a trusteeship was within the equitable power of the court, where such an action provided a common benefit to all members of the union.
 
 
 16
 The International's primary challenge to the fee award is that a victory at the preliminary injunction stage of this litigation did not merit an award of attorney's fees.[6] The district court found that under Hall and McDonald, Local 272 conferred a significant common benefit upon the members of Local 272 by having the initial trusteeship dissolved and requiring a hearing "in a scrupulously fair manner, prior to imposition of a trusteeship." The district court ruled that Local 272 and the other plaintiffs fit the definition of prevailing parties with respect to having obtained the preliminary injunction, because this procedural victory was "separate and distinct" from Local 272's ultimate failure to have the trusteeship permanently dissolved.
 
 
 17
 Initially, we note that the district court's decision was rendered without the benefit of the Supreme Court's most recent pronouncement on this issue. In Texas State Teachers v. Garland Independent School District, --- U.S. ----, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), the Supreme Court clarified the standard for determining whether a litigant may be considered a "prevailing party" deserving of a fee award. A litigant need not prevail on the central issue in the case or obtain the primary relief sought. However, the plaintiff must, "at a minimum, to be considered a prevailing party ... be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." 109 S.Ct. at 1493.
 
 
 18
 While in some cases a preliminary injunction may have such an impact, we do not find that to be true in this case. This is a far cry from cases such as Yablonski v. United Mine Workers, 466 F.2d 424 (D.C.Cir.1972) where the District of Columbia Court of Appeals allowed a fee award for attainment of a preliminary injunction that proved to be the "critical step" and essentially procured "all the relief required." 466 F.2d at 431. Nor is this a case where the International apparently planned to impose a trusteeship without a hearing of any kind. In this case, an internal union hearing had already been scheduled at the time that Local 272 moved for a preliminary injunction. The only act which delayed that hearing was the bringing of this action. There is nothing to indicate that the scheduled hearing would not have been held, or that the internal hearing was ultimately more "fair" than it would have been absent the preliminary injunction. The only purpose served by the injunction was to prevent any harm to Local 272 until the internal hearing could be held and the merits of Local 272's challenge to the trusteeship could be evaluated.
 
 
 19
 We find the analogous precedent for this case to be Royal Crown Cola Company v. Coca Cola Company, 887 F.2d 1480 (11th Cir.1989). In Royal Crown, the plaintiff brought suit under the Clayton act and obtained a preliminary injunction forestalling a planned acquisition by its competitor. At the same time a parallel action, instituted by the Federal Trade Commission, raised concerns about the same proposed merger. The federal plaintiff's complaint was ultimately dismissed without a hearing on the merits, because the defendants chose to abandon the planned acquisition altogether. We declined to allow an award of attorney's fees for success at the preliminary injunction stage, holding that where a preliminary injunction was obtained which essentially preserved the status quo until a hearing could be held, and the plaintiffs could not demonstrate that the injunction was a "substantial factor" in causing the defendants to alter their course of action, the plaintiffs' success did not merit an award of attorney's fees.
 
 
 20
 Similarly, the preliminary injunction in this case merely preserved the status quo pending the already scheduled internal hearing and ultimately unsuccessful substantive challenge to the trusteeship. Success at the preliminary injunction stage in this case does not support a fee award because it did not alter the legal relationship between parties. In so holding, we do not preclude the possibility that a plaintiff who is ultimately successful on the merits may be reimbursed for fees incurred at the preliminary injunction stage, or that a plaintiff successful in obtaining a hearing where none was planned may make a meritorious claim for attorney's fees. In both such scenarios, the injunction could form a vital function in changing the legal relationship between the parties, in a way it did not in this case.[7]
 
 
 21
 We do not intend to minimize the importance of having a hearing prior to the imposition of a trusteeship. However, this court has not adopted the "automatic" standard expounded by the District of Columbia and Ninth Circuits, whereby a trusteeship is invalid ab initio if imposed prior to a hearing absent an emergency. The standard in this Circuit is a more flexible one, as set out in Jolly v. Gorman, 428 F.2d 960 (5th Cir.1970), cert. den'd., 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971). In Jolly, we held that the decision of whether to allow a trusteeship prior to a hearing is a matter of discretion for the district court. Such a flexible standard is based on this court's reading of the language of 29 U.S.C. Sec. 464(c), which explicitly states that a trusteeship may enjoy a presumption of validity if imposed after a hearing or ratified. There are no "automatic" procedural rules rendering the trusteeship invalid absent a dire emergency. Thus, the determination of whether preliminary relief alters the legal relationship between the parties is also necessarily made on a case-by-case basis.
 
 
 22
 Within this flexible framework the district court in this case acted within its discretion when it stayed the trusteeship prior to the internal hearing due to the apparent absence of an emergency. However, under the recent cases of Garland and Royal Crown, the court went too far in concluding that Local 272 "prevailed" in a manner sufficient to justify attorney's fees.[8]
 
 
 23
 The opinion of the district court is REVERSED.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 The Court also determined that the catchall language in section 302 of LMRDA, 29 U.S.C. Sec. 462, which provides that a trusteeship may be imposed in order to carry out "the legitimate objects" of a labor organization, could not be invoked to justify imposition of a trusteeship prior to a hearing in a nonemergency situation. Although the district court stated that this was a "separate grounds" for its decision, this court can find no logical way to distinguish this ruling from the rest of the district court's reasoning, i.e., that no trusteeship should be imposed prior to a hearing in the absence of an emergency
 
 
 [2]
 This provision reads, "In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution and bylaws shall be presumed valid for a period of 18 months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title." 29 U.S.C. Sec. 464(c)
 
 
 [3]
 This section provides that "Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring that performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organizations." 29 U.S.C. Sec. 462
 
 
 [4]
 The court also rejected Local 272's claims that the actions of the trustees constituted a breach of their fiduciary duty under 29 U.S.C. Sec. 501, as well as the claim that members of Local 272 had been illegally harassed, or that the International should be held in civil contempt for refusing to comply fully with the court's preliminary injunction
 
 
 [5]
 The award is reviewable under the abuse of discretion standard. Hall, 412 U.S. 9, n. 13, 93 S.Ct. 1948, n. 13
 
 
 [6]
 The "prevailing party" requirement for fee shifting is necessarily implicit in the Hall line of cases, wherein the Supreme Court sanctioned fee-shifting for "successful plaintiffs." 412 U.S. at 9, 93 S.Ct. at 1948. Rather than create one standard for the judicially sanctioned "common benefit/successful plaintiff" and another for the statutorily created "prevailing party" the prevailing party concept is, sensibly, directly imported from cases interpreting various statutes that contain fee-shifting provisions, such as 42 U.S.C. Sec. 1988, and grafted onto the common benefit doctrine
 
 
 [7]
 Our holding today is consistent with the result reached by the one other circuit to address this precise issue. See Benda v. Grand Lodge of International Assoc., etc., 584 F.2d 308 (9th Cir.1978) (assuming arguendo that an award of fees is proper under common benefit exception, success at the preliminary injunction stage is not appropriate for an award of attorneys fees in an action challenging imposition of a trusteeship)
 
 
 [8]
 In light of our decision we need not render an opinion on the International's claim that the fee award was assessed against the improper party, or Local 272's challenge to the district court's reduction of the fee award