EXECUTIVE BOARD LOCAL 1302, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Plaintiff-Appellee,

v.

UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Defendant-Appellant.

No. 385, Docket 72–1865.

United States Court of Appeals, Second Circuit.

Submitted Jan. 22, 1973.

Decided April 16, 1973.

Norman Zolot, Hamden, Conn., for defendant-appellant.

Matthew Shafner, O'Brien, Shafner & Garvey, Groton, Conn., for plaintiff-appellee.

Before MOORE, HAYS and OAKES, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the District of Connecticut, 339 F.Supp. 613, granting an injunction prohibiting the defendant International Union, its general executive board, its officers and representatives from interfering with or otherwise restricting the plaintiff Local in the legitimate conduct of its affairs and, particularly, from interfering with the plaintiff Local's filing a petition for disaffiliation and a petition for a separate certification with the National Labor Relations Board. The appellant contends that the imposition of trusteeship for the purpose of preventing the Local from petitioning the Board for disaffili-

ation and separate certification is pired in June 1972. The International has indicated that it will again impose a trusteeship should Local 1302 file a new petition for disaffiliation with the Board.

Local 1302 is composed of about 400 carpenters all of whom are employed by the Electric Boat Division of General Dynamics in Groton, Connecticut. Local 1302 is one of eleven separate unions represented by the Metal Trades Council of New London County in collective bargaining with the Electric Boat Division. The Metal Trades Council has been certified by the National Labor Relations Board since 1945 as the bargaining representative for the eleven unions and has for over twenty-five years negotiated collective agreements covering the Electric Boat Division's approximately 8000 employees. In August 1967 Local 1302 voted to disaffiliate from the Metal Trades Council and seek separate certification in order to deal directly with the employer in behalf of the 400 carpenters rather than to continue to bargain through the Council representing all 8000 employees. The International ordered Local 1302 to refrain from filing for separate certification. Refusing to obey this order, the Local filed the petition for separate certification. The International thereupon, after holding a hearing on the matter, imposed a trusteeship and appointed a trustee. The trustee withdrew the Local's petition for separate certification.

The trusteeship was withdrawn by the International after a new contract was agreed upon by the Metal Trades Council and the employer. This contract ex-

among the "legitimate objects" of a labor organization within the meaning of Section 302 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 462 (1964). We agree with this contention of the appellant and reverse the judgment of the District Court.

The sole question presented on this appeal is whether the imposition of the trusteeship is permissible under Section 302 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 462 (1964).

Section 302 of the Act provides:

"Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or otherwise carrying out the legitimate objects of such labor organization."

It is clear from Section 302 that there are two conditions for the valid imposition of a trusteeship: the International must comply with its own constitution in establishing and administering the trusteeship and the trusteeship must be imposed for one of the purposes enumerated in the Section. See United Bro. of Carpenters & Joiners v. Brown, 343 F.2d 872, 882 (10th Cir. 1965). There is no contention in the instant case that the International did not comply with its constitution in imposing the trusteeship.[1] Therefore the only question at issue is whether the purpose for which the trusteeship was imposed was one of those enumerated in Section 302.

---

1. Paragraph D, Section 6 of the International's constitution provides:

"The United Brotherhood of Carpenters and Joiners of America shall have the right to establish supervision over and to conduct the affairs of any subordinate body (including the removal of any or all officers of such subordinate body) to correct financial irregu-
larities or to assure the performance of collective bargaining agreements and the responsibility of the subordinate body as a bargaining agent or to protect the interests and rights of the members or whenever the affairs of the subordinate body are conducted in such a manner as to be detrimental to the welfare of the members and to the best interests of the

■ It is our view that the trusteeship was imposed for the purpose of "carrying out the legitimate objects of such labor organization." The Senate Report on Section 302 said:

"[trusteeships] are among the most effective devices which responsible international officers have to ensure order within their organization. In general, they have been widely used to prevent corruption, mismanagement of union funds, violation of collective bargaining agreements, . . . .; in short, to preserve the integrity and stability of the organization itself." 1959 U.S.Code Cong. & Admin.News p. 2333.

Here the trusteeship was imposed in order "to preserve the integrity and stability of the organization."

The Metal Trades Council from which the Local seeks to disaffiliate is chartered by the Metal Trades Department of the American Federation of Labor and the Congress of Industrial Organizations. The governing body of the Council is the executive board which is comprised of delegates representing each of the affiliated local unions. The object of the Council, and of the Metal Trades Department generally, is to facilitate the adjustment of trade disputes along practical lines and thus to encourage harmonious relations between employees and employers. The constitution of the Metal Trades Department provides:

"Where there exist three (3) or more local unions of affiliated trades in any locality, they shall, when called upon by their respective national and international organizations, form a local metal trades council of this Department, which bodies shall be governed in accordance with the laws of this Department."

In connection with imposing the trusteeship on the Local, the committee of the International which heard the charges found that collective bargaining by the Metal Trades Council on behalf of Local 1302 and the ten other affiliated local unions had resulted over many years in stable bargaining relationships under which the members of the affiliated locals had received substantial benefits. The committee also found that the filing by the Local of the petition for disaffiliation had resulted in delaying the then current collective negotiations. The committee concluded that the Local's disaffiliation would have a detrimental effect on the process of collective bargaining and would constitute a failure to carry out its duties to its members in a responsible manner.

It appears to us that the Committee's conclusions were clearly justified. Not only would separate bargaining negotiations delay the execution of a collective agreement, but disaffiliation by the Local might well lead to attempts at disaffiliation by other locals of the eleven unions representing the 8000 employees of the Electric Boat Division, and the undermining of the Council's position as bargaining representative. Such a development would almost inevitably result in instability of the whole bargaining relationship with the eleven locals vying

---

United Brotherhood, subject, however, to the provisions of Paragraph J of Section 10."

Paragraph J of Section 10 provides:

"Whenever it appears to the satisfaction of the General President that any Local Union or member thereof, or any District, State or Provincial Council is acting contrary to the welfare of the United Brotherhood of Carpenters and Joiners of America, or that supervision should be established over the conduct of the affairs of any subordinate body as set forth in Section 6–D, he may appoint a committee to hold a hearing, after due notice to such subordinate body or member. Upon completion of the hearing, the committee shall report its findings and recommendations to the General Executive Board and to the member or subordinate body involved. The General Executive Board is empowered to take such action as is necessary and proper for the welfare of the United Brotherhood of Carpenters and Joiners of Ameria, subject, however to the right of appeal to the next General Convention."

to outdo one another and resorting to strikes to accomplish their aim. It was to avoid just such results that the Metal Trades Department was organized.

Thus the trusteeship was imposed to prevent the destruction of the existing bargaining unit and to preserve the status of the certified bargaining representative. The International action was designed, in our opinion, to carry out "the legitimate objécts" of the organization within the meaning of Section 302.

The case of National Association of Letter Carriers v. Sombrotto, 449 F.2d 915 (2d Cir. 1971), lends support to the proposition that Section 302 allows the imposition of a trusteeship in a situation in which the Local seeks to petition for a new bargaining unit. In *Sombrotto,* Branch 36, a National Association of Letter Carriers local, attempted to petition for a new local area bargaining unit. To prevent this action, as well as a threatened strike, the national union imposed a trusteeship. This court upheld the imposition of the trusteeship, saying:

"The union is entitled to protect itself, and actions taken toward this end appear to us directed toward a 'legitimate object' within the meaning of 29 U.S.C. § 462." [2]

■ It is significant that Congress in enacting Section 302 emphasized the limited role of the judiciary in reviewing the imposition of trusteeships under the Section. To protect against judicial intervention, Congress established a presumption of validity by which courts are not to overturn a trusteeship for the first 18 months of its existence "upon a question of fact or degree or of judgment as to the necessity for imposing it" but only "if dishonesty or bad faith is proved." Given this background, judicial intervention should be undertaken with only the greatest care and caution.

■ It should be noted that our decision does not mean that the members of the local are being locked in to the union. If the members of Local 1302 wish to repudiate the United Brotherhood of Carpenters and Joiners and start a new union through which to bargain, they are free to do so. However, this is not what they have attempted to do. Instead they have attempted to stay within the International while at the same time withdrawing from the Metal Trades Section and from the established bargaining system. As Judge Friendly noted in a slightly different context,

"Although § 1203(c) [similar to section 9 of the LMRA] protects. the right of employees or labor organizations to seek a new bargaining representative when they have become dissatisfied with the existing one it does not necessarily mean that in exercising that right while still maintaining membership in the national union, they are immune from discipline by the parent body as provided in the union constitution." *Sombrotto, supra,* at 923.

The judgment of the District Court is reversed and the permanent injunction prohibiting the trusteeship dissolved.

OAKES, Circuit Judge (dissenting): I dissent.

There is no doubt that the International may under its constitution impose a trusteeship to assure the performance of a collective bargaining agreement, but here the agreement has expired. The question is, then, whether it may impose such a trusteeship—or as it has been called a "labor receivership"—solely to prevent the local from petitioning the Board for disaffiliation or separate certification, on the basis that keeping the local as a part of the International is one of "the legitimate objects" of the International, within § 302 of LMRDA,

[2] The *Sombrotto* decision involved Section 1203(c) of the Postal Reorganization Act, 39 U.S.C. 1203(c), instead of Section 9 of the Labor Management Relations Act; however, the sections are similar in purpose and the analysis presented is applicable to the instant case.

29 U.S.C. § 462. In National Association of Letter Carriers v. Sombrotto, 449 F.2d 915 (2d Cir. 1971), a majority of the panel indicated that a "legitimate object" of the International, enforceable by a trusteeship, was to prevent a local from seeking to disaffiliate "while still maintaining membership in the national union . . . ." 449 F.2d at 923. But *Sombrotto* involved a trusteeship imposed to prevent a local's strike that would have been in violation of a collective bargaining agreement. Its dictum that a trusteeship could be imposed to prevent a local's disaffiliation was, as the majority of the *Sombrotto* panel itself seemed to recognize, 449 F.2d at 923, unnecessary to the disposition of that appeal and should be limited to the particular circumstances—the preservation of a collective bargaining agreement—involved therein. Here, however, the majority holds in effect that a local may be "locked in" and forever unable to disaffiliate even absent a collective bargaining agreement.

Not every objective of an International in setting up a trusteeship is necessarily legitimate. In interpreting the broad language of § 302 due weight must be given to other sections of the LMRDA, United Brotherhood of Carpenters and Joiners v. Brown, 343 F.2d 872, 882 (10th Cir. 1965) (trusteeship imposed because a local would not affiliate with a District Council or raise its dues is not imposed for a proper purpose within § 302), as well as other aspects of national labor policy.

As to the latter, extension of *Sombrotto* to this case would infringe on the local's specifically guaranteed right as a craft unit to bargain separately. Labor Relations Act § 9(a) & (b)(2), 29 U.S.C. §§ 159(a) & (b)(2). *See* Mallinckrodt Chemical Works, 162 NLRB 387 (1966). The majority takes the position that the members of the local could go out and start a new local, one which would not be affiliated with the International. This is, of course, true, but under § 9(b)(2), a craft unit may seek representation separate from the larger unit previously designated by the Board as the appropriate unit for collective bargaining. If doing so amounts to a violation of the International constitution or by-laws, this may be grounds for expulsion of the local from the International. But to permit a trusteeship to be imposed is effectively to prevent the craft unit from enforcing its statutory right to sever.

Furthermore, permitting the trusteeship to be imposed here defeats one of the principal purposes of other provisions of the LMRDA, protecting the democratic process within union organizations. 29 U.S.C. § 401; United Brotherhood of Carpenters and Joiners v. Brown, *supra*, 343 F.2d at 882–883.

A reading of the relevant legislative history, II Legislative History of the Labor-Management Reporting and Disclosure Act 1202 et seq. (1959), establishes that, despite Senator Ervin's reference to it as "specific," *id.* at 1204, the "legitimate objects" clause of § 302 of the Act is plainly ambiguous. I would limit it to a reference that a trusteeship can be imposed only for objects consistent with other legally established rights of a local and thus not extend it to allow the International to keep the local here "locked in."