(24) Certain Administrative Committee Members' motion to dismiss (# 269) is DENIED;

(25) Enron Corp.'s motion to dismiss (# 370) ERISA claims against it is DENIED.

As a housekeeping matter, Plaintiffs' motion for leave to file notice of supplemental authority regarding *In re Worldcom ERISA Litigation* (# 598), the Secretary of Labor's request for leave to file response to supplement Outside Directors' motion to dismiss ERISA claims (# 624), and Plaintiffs' motion for leave to file notice of supplemental authority regarding *Kmart ERISA Litigation* (# 628) are GRANTED.

As a final matter, in light of this ruling, should the *Tittle* Plaintiffs wish to amend their motion for class certification, they shall notify the Court as soon as possible, with an indication of how much time they will need to file a superseding motion.

---

against the Administrative Committee and its members, conclusorily names Skilling, it does not state that he was a member of the Administrative Committee. Moreover the complaint

---

TEAMSTERS LOCAL UNION NO. 2000, Danny Campbell, Robert Krabbe, Anne Meyer, Michele Worley, Dennis McCarthy, Andrew Collis, Yvonne Thompson and Scott Garb, Plaintiffs,

v.

James P. HOFFA, General President, Individually and in his official capacity, and International Brotherhood of Teamsters, AFL–CIO, a labor organization, Defendants.

No. 02–73040.

United States District Court, E.D. Michigan, Southern Division.

March 31, 2003.

provides no details to support Skilling's liability, and Plaintiffs do not address Skilling's role in their opposition brief.

Hugh M. Davis, Jr., Constitutional Litigation Associates, Barbara M. Harvey, Julian J. Gonzalez, Detroit, MI, Elizabeth A. Grdina, Heller, Huron, Washington, DC, for Plaintiffs.

Bradley T. Raymond, Finkel, Whitefield, Farmington Hills, MI, Roland P. Wilder, Robert M. Baptiste, William R. Wilder, Baptiste & Wilder, Washington, DC, for Defendants.

## ORDER

ROBERTS, District Judge.

## I. INTRODUCTION

This matter is before the Court on: (1) Plaintiffs' Motion for Preliminary Injunction; (2) Defendants' Motion to Dismiss Verified Complaint and to Strike Local 2000 as a Party Plaintiff; and (3) Plaintiffs' Cross–Motion for Partial Summary Judgment.[1]

## II. BACKGROUND

The Plaintiffs are Teamsters Local Union No 2000 (Local 2000); five individuals who are union members and members of Local 2000s executive board; and, one individual who is a union member and Northwest Airlines flight attendant (hereinafter collectively referred to as "Plaintiffs" or "the Board"). Their complaint against Defendants International Brotherhood of Teamsters, AFL–CIO (IBT) and James P. Hoffa, General President of the IBT, alleges violations of the Labor–Management Reporting and Disclosure Act (LMRDA). Local 2000 is a labor organization that represents all Northwest Airlines and Sun Country Airlines flight attendants.

The executive board members, elected officers of Local 2000, were summarily removed from their positions on July 1, 2002 at the direction of Defendant Hoffa, due to their alleged failure to expeditiously respond to and aggressively defend against a threatened "raid" by a new labor organization, the Professional Association of Flight Attendants (PFAA). The PFAA is launching a campaign to woo a sufficient number of IBT members (via the signing of cards) such that an election will be required to allow IBT flight attendants to choose between the IBT and the PFAA as their representative. Per Hoffa, the executive board's failure to act in the manner that he directed compromised IBT's ability to effectively thwart PFAA's campaign and, therefore, threatened the continued existence of the IBT.

The executive board asserts that they did not refuse to defend against the threatened raid, but lobbied against the aggressive tactics proposed by Hoffa. The board, instead, proposed that a debate between IBT and the PFAA be conducted for the benefit of Local 2000 members. Hoffa rejected the board's proposals and imposed an emergency trusteeship on Local 2000 to assume the duties of the board.

Plaintiffs' Complaint alleges that Defendants removed them from their positions because of their expressed views on how to oppose the PFAA raid and their refusal to engage in the particular speech (against the raid) demanded by Defendants. Per Plaintiffs, Defendants' actions violated their free speech rights under LMRDA, section 101(a)(2), 29 USC § 411(a)(2). Plaintiffs further allege that the trusteeship was imposed in violation of LMRDA section 302, 29 USC §§ 462 and 464, in that no hearing was conducted, the trusteeship was not imposed for any reason authorized by section 302 and the threatened raid did not constitute an emergency with regard to governance of Local 2000.[2] Plaintiffs, in their Motion for Temporary Restraining Order, request that the board be reinstated pending a decision on the merits.

1. Plaintiffs filed an Amended Complaint on November 12, 2002 adding allegations regarding Defendants' expenditures since the trusteeship was imposed. Consequently, the parties' motions do not address these allegations.

2. In Count 2 of the Amended Complaint, Plaintiff also alleges a violation of § 466, based upon Defendants' expenditures under the trusteeship.

## III. STANDARD OF REVIEW

Plaintiffs request a preliminary injunction under FRCP 65 and summary judgment under FRCP 56(c). Defendants' bring their Motion to Dismiss pursuant to FRCP 12(b)(6) and their Motion to Strike pursuant to FRCP 12(f).

■ In the Sixth Circuit, when determining whether to issue a preliminary injunction, the court must consider four factors:

(1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction.

*Washington v. Reno,* 35 F.3d 1093, 1099 (6th Cir.1994).

With respect to the first factor, some opinions have expressed a need for the court to find a "strong" likelihood of success on the merits. *See United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority,* 163 F.3d 341, 347 (6th Cir.1998). Other opinions have stated that it is enough for the movant to show "serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *See Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 105 (6th Cir.1982). Still others emphasize that the four considerations are factors to be balanced rather than prerequisites that must be met. *See Mascio v. Public Employees Retirement System of Ohio,* 160 F.3d 310, 313 (6th Cir.1998). "A district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue." *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.,* 119 F.3d 393, 399 (6th Cir. 1997).

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.,* 53 F.3d 146, 150 (6th Cir.1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. Ag Trucking, Inc.,* 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox,* 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937 (6th Cir.1995); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989). The moving party does not, however, have to support its motion for summary judgment with

evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

When reviewing a Rule 12(b)(6) Motion, the trial court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994); *see also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). Because a Rule 12(b)(6) motion rests upon the pleadings rather than the evidence, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence or evaluate the credibility of the witnesses." *Miller*, 50 F.3d at 377. The court should deny a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Gazette*, 41 F.3d at 1064; *see also Miller*, 50 F.3d at 377; *Vemco, Inc. v. Camardella*, 23 F.3d 129, 132 (6th Cir.1994). While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993). Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *DeLorean*, 991 F.2d at 1240.

## IV. ANALYSIS

### A. Defendants' Motion to Dismiss/Plaintiffs' Cross Motion for Summary Judgment/Plaintiffs' Motion for Preliminary Injunction

Since Plaintiffs' Motions for Preliminary Injunctions and Summary Judgment and Defendant's Motion to Dismiss are based on the same predicate of facts and law, the Court will analyze the legal issues and then apply the respective standards of review in deciding each motion.

In Count 1 of their Complaint[3], Plaintiffs allege that Defendants' removed them from their positions because of their expressed views on how to oppose the PFAA raid and their refusal to engage in the particular speech (against the raid) demanded by Defendants in violation of their free speech rights under LMRDA, section 101(a)(2), 29 USC § 411(a)(2), which states:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the respon-

---

**3.** Plaintiffs actually listed their claims as A and B. The Court will refer to them, however, as Counts 1 and 2, respectively.

sibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

In Count 2, Plaintiffs allege that the trusteeship was imposed in violation of LMRDA section 302, 29 USC §§ 462, 464, because no hearing was conducted prior to the trusteeship, the trusteeship was not imposed for any reason authorized by section 302 and the threatened raid did not constitute an emergency with regard to governance of Local 2000.

§ 462 enumerates permissible purposes for which a trusteeship can be imposed:

Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and **for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization. (emphasis added).**

▮ LMRDA Section 304(c), 29 U.S.C. § 464(c) requires the Court to begin its analysis by determining 1) whether the trusteeship was imposed in accordance with the requisite procedural requirements as set forth in the union's constitution and bylaws and 2) whether it was authorized or ratified after a fair hearing. Section 464(c) provides:

In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other

body as may be provided in accordance with its constitution or bylaws shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title.

"A fair hearing has three minimum requirements: (1) notice of the charges, (2) presentation of evidence and witnesses, and (3) an opportunity for cross-examination." *International Brotherhood of Boilermakers v. Local Lodge D238 of the Cement, Lime, Gypsum and Allied Workers Div. of the Intern. Brotherhood of Boilermakers*, 865 F.2d 1228, 1236 (11th Cir. 1989). See also *Becker v. Industrial Union of Marine and Shipbuilding Workers of America*, 900 F.2d 761, 768 (4th Cir.1990)(notice should be written and include a factual basis for alleged violations, date, time and location of hearing, and that the local will have an opportunity to respond).

▮ A hearing may be held even after a trusteeship has been imposed, so long as the General President reasonably believes that an emergency exists, the constitution permits post hoc ratification and the hearing is conducted within a reasonable time after the imposition of the trusteeship. See *Becker*, 900 F.2d at 769; *International Brotherhood of Teamsters v. Local Union No. 810*, 19 F.3d 786, 791 (2nd Cir.1994); *Local Union 13410 v. United Mine Workers of America*, 475 F.2d 906, 915 (D.C.Cir. 1973). Courts have adopted the Webster's Collegiate Dictionary's (9th ed. 1989) definition of an emergency as "an unforeseen combination of circumstances or the resulting state that calls for immediate action." *Local Union No. 810*, 19 F.3d at 793; *International Brotherhood of Teamsters,*

*Local Union 107 v. International Brotherhood of Teamsters,* 935 F.Supp. 599, 602 (E.D.Pa.1996). A parent organization is not obligated to prove that an actual emergency existed, if the General President had a reasonable belief that there was an emergency. *Local Union No. 810,* 19 F.3d at 791–793. While a court does have discretion to assess whether the General President reasonably believed that there was an emergency, it is not for the court to decide whether, in fact, such was the case. See *Retail Clerks Union, Local 770 v. Retail Clerks International Assoc.,* 479 F.2d 54, 55 (9th Cir.1973); *International Brotherhood of Teamsters, Local Union 107,* 935 F.Supp. at 601.

If the procedural requirements have been met, the parent organization is entitled to an 18 month presumption of validity, during which time the trusteeship cannot be challenged. § 464(c). The presumption can only be rebutted with "clear and convincing" evidence that the trusteeship was not established or maintained in good faith for one of the purposes set forth in § 462. *Teamsters Local Union No. 406 v. Crane,* 848 F.2d 709, 712–713 (6th Cir.1988).

■ The Court must give deference to the judgment of a union official for the proffered reasons for imposing a trusteeship as long as there is "substantial evidence" to support the reasons offered. *Id.* at 713. "If there is no substantial evidence which can be pointed to as justifying the decision of the union officials, then it is not likely that the imposition of the trusteeship was in good faith." *Id.* The Second Circuit in *Local Union No 810* stated that, to constitute bad faith, the General President's actions must be prompted by some interested or sinister motive, rather than an honest mistake as to his duty as General President. 19 F.3d at 794. Conclusory accusations and suppositions are not sufficient to establish bad faith in satisfaction of the clear and convincing evidence standard. *Local Union No. 810,* 19 F.3d at 794.

■ The Court must determine whether the decision to impose the trusteeship was based on a sincere good faith effort to achieve legitimate goals. *Id.* The Court must not, however, substitute its judgment for the union official's regarding whether less intrusive remedies were available. *Id.*

■ Here, the parent organization's actions are entitled to the presumption of validity under § 464(c). There is evidence that General President Hoffa had a reasonable belief that an emergency existed which justified imposition of a trusteeship prior to a hearing. There is no apparent dispute that the threatened raid, if successful, would terminate IBT's certified bargaining status and eliminate Local 2000. The overwhelming record evidence indicates that not only Hoffa, but also several other officials, including Plaintiffs, considered the PFAA raid as a genuine threat. Plaintiffs acknowledge as much in their Complaint, stating that "[t]he PFAA's announcement was taken seriously by the Local 2000 executive board, given the recognized widespread membership disaffection with the IBT." Complaint, ¶ 39.

Additionally, correspondence within the union had a consistent tone of urgency. For example: In a June 21, 2002 letter from General Counsel Patrick J. Szymanski to Plaintiffs' current counsel (and then counsel for Local 2000) he urges the Local to Immediately draft a response letter to counter the literature known to be circulating among members from the PFAA (Def. Exh. 7); In each of the letters from Hoffa to the board, June 24th and June 27th, he asserts that immediate action is imperative to effectively thwart the efforts of the PFAA, of which the IBT had only become aware of one week prior (Def. Exhs. 9, 17); and eleven elected Representatives signed

a letter to Hoffa, dated June 26, 2002, urging him to take immediate action to oppose the raid on behalf of Local 2000 (Def. Exh. 14). Indeed, in correspondence to Hoffa, Plaintiffs Krabbe and Campbell even characterize the threat as an emergency. Def. Exh. 10, 14.

Under these circumstances, the Court finds that substantial evidence supports Hoffa's reasonable belief that the situation had become an emergent one, requiring action by the IBT when he was confronted with Plaintiffs' seemingly passive response.

The evidence also supports Defendants' claim that Plaintiffs' received a fair post hoc ratification hearing. The Defendants complied with the procedural requirements set forth in the union's constitution and bylaws. Plaintiffs dispute whether adequate notice was given and whether they were given an opportunity to cross examine all witnesses, since statements were accepted for 10 days after the hearing. Each of Plaintiffs' assertions lacks merit.

■ With regard to adequate notice, Plaintiffs make much of the fact that Defendants utilized the Local website in lieu of "official notice." Plaintiffs further offer the Declarations of former officer Michelle Worley and member Joshua Austad which assert that notice of the hearing was not posted at one of the bases, and implying that a significant number of members did not receive the mailings until the day before the hearing. Plaintiffs also take issue with the format of the announcement prepared by Trustee Reiley, and with regard to the placement of the notice and its prominence.

Neither the parties' constitution and by-laws nor statutes or caselaw mandate that hearing notices be sent in a certain form or by a certain means. Indeed, in *Becker v. Industrial Union of Marine and Shipbuilding Workers of America*, 900 F.2d 761, 768 (4th Cir.1990), the court held that such notices need only be written, include the factual basis for alleged violations, the date, time and location of hearing, and that the local will have an opportunity to respond.

Here, Plaintiffs do not dispute that the notices sent were substantively adequate and their complaints regarding the method of distribution are without merit. First, Plaintiffs do not indicate what constitutes "official" notice and in what way it is superior to the methods Defendants employed.

Second, even assuming that Worley and Austad's averments are true. Plaintiffs do not contradict Defendants' assertion that they posted hearing notices at 9 worksites on July 15–17, 2002, mailed them to the officers and included the information in the trustee report, which was mailed to members on July 16, 2002. See Declaration of David–Barrow West, ¶ 16. Defendants' uncontroverted evidence establishes that Defendants' distribution satisfied the 10–day requirement in the union constitution. Art VI, § 5(a).

Finally, with regard to the form of the trustee report, the hearing notice is in the middle of the second page of a two page document that is primarily devoted to the subject of the trusteeship imposed on Local 2000. Pl.'s Exh. 8. The notice is printed in the same size font as the other information on the page and, in contrast, is in bold type. There is no evidence or basis for Plaintiffs' assertion that the notice in this form was inadequate to notify the recipients of the hearing.

■ Plaintiffs also claim that the hearing did not afford them complete due process because they were not permitted to cross examine the proponents of any statements that were tendered during the 10–day period after the hearing. However, there is no evidence that Plaintiffs were otherwise deprived during the hearing and "[t]he law is clear that a fair hearing under the [LMRDA] need not include all of the

formalities of a judicial proceeding." *Becker,* 900 F.2d at 771. Furthermore, the panel offered this opportunity to supplement the hearing to both opponents and proponents of the trusteeship, and panel member Sowell acknowledged that the additional comments were unsworn and, therefore, would be weighed accordingly. Transcript at p. 219.

Because Defendants complied with the procedural requirements of the IBT constitution and bylaws and the trusteeship was ratified following a fair hearing, the Court must consider now whether Plaintiffs have rebutted the presumption of validity, per § 464(c), with clear and convincing evidence that the trusteeship was imposed either in bad faith or for an improper purpose.

Plaintiffs have not offered any evidence from which the Court could infer bad faith on the part of Hoffa. Plaintiffs assert that Hoffa was actually motivated by a political agenda designed to eradicate the executive board and/or Local 2000 in its entirety. However, Plaintiffs only offer the conclusory, hearsay presumptions of some members and officers as proof. Plaintiffs cannot meet their burden of proof on such evidence. *Local Union No. 810,* 19 F.3d at 794. Also, as set forth above, Defendants have tendered substantial evidence to support their reasons for imposing the trusteeship. Therefore, the Court is required to defer to Hoffa's judgment. *Crane,* 848 F.2d at 712–713.

The last viable basis for Plaintiffs' claim is that Defendant Hoffa's undisputed reason for imposing the trusteeship-because the executive board refused to respond as directed to the threatened PFAA raid-violated the board's free speech rights under § 101(a)(2) of LMRDA, 29 U.S.C. § 411(a)(2), and, therefore, the trusteeship was imposed for an improper purpose. To the contrary, Defendants contend that Hoffa's action was necessary to "assur[e]

the performance of collective bargaining agreements or other duties of a bargaining representative" and to "otherwise carry [ ] out the legitimate objects" of the IBT, which are expressly considered proper purposes for imposition of a trusteeship under 29 U.S.C. § 462.

 § 101(a)(2) is entitled "Free Speech and Assembly" and states:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

The United States Supreme Court in *United Steelworkers of America v. Sadlowski,* 457 U.S. 102, 109, 102 S.Ct. 2339, 72 L.Ed.2d 707 (1982) made it clear that the scope of a union member's free speech rights under § 101(a)(2) is not as broad as those afforded under the First Amendment by stating:

> In light of the legislative history, we do not believe that § 101(a)(2) should be read as incorporating the entire body of First Amendment law, so that the scope of protections afforded by the statute coincides with the protections afforded by the Constitution.

The *Sadlowski* Court considered whether a union rule prohibiting candidates for

union office from accepting campaign contributions from nonmembers violated their free speech rights under LMRDA (because it interfered with effective advocacy in union campaigns). *Id* at 107–108, 102 S.Ct. 2339. In its analysis, the Court held that union rules are valid so long as they are reasonable. *Id.* at 111, 102 S.Ct. 2339.

■ The Court indicated that a two step inquiry is required to analyze a rule's validity. A court must first consider whether the rule interferes with an interest protected by the free speech clause in § 101(a)(2). If it does, the court must determine whether the rule is reasonable and, therefore, allowed per the proviso in § 101(a)(2). *Id.* While the Court stated that First Amendment principles may be helpful, they are not controlling: "[t]he critical question is whether a rule that partially interferes with a protected interest is nevertheless reasonably related to the protection of the organization as an institution." *Id* at 111–112, 102 S.Ct. 2339. Although there is no specific union rule at issue in this case, the *Sadlowski* Court's analysis is instructive.

■ The first question for the Court, therefore, is whether Plaintiffs engaged in an act of free speech. Plaintiffs assert that the board's act of refusing to respond to the threatened raid as instructed by Hoffa, in favor of presenting the issue to the membership for debate, is tantamount to protected speech under § 101(a)(2). Contrary to the cases cited by Defendants as analogous, Plaintiffs argue that they did

not take any steps to advocate the rival organization and that their desire to allow members to engage in debate on this issue does not constitute dual unionism [4], which is clearly prohibited activity. *Mayle v. Laborer's International Union of North America, Local 1015,* 866 F.2d 144 (6th Cir.1988).

Rather, Plaintiffs assert there is support for their position in several cases involving attempts by a union to "disaffiliate" [5] from the existing union in favor of an opposing union. *NLRB v. Bear Archery,* 587 F.2d 812 (1977); *CAPE Local Union 1983 v. International Brotherhood of Painters & Allied Trades,* 598 F.Supp. 1056, 1074 (D.N.J.1984); *International Brotherhood of Boilermakers v. Local Lodge D474,* 673 F.Supp. 199, 203 (W.D.Tex.1987). In *CAPE* and *Boilermakers,* the court upheld the imposition of a trusteeship to prevent disaffiliation where it found that there were other reasons for imposing the trusteeship and that members had not been given "an adequate opportunity to reflect and consider opposing views" prior to voting in favor of disaffiliation.[6] In *Bear Archery,* the Sixth Circuit refused to enforce a National Labor Relations Board (NLRB) order requiring an employer to bargain with a newly affiliated bargaining representative on the ground that "the election procedures did not provide the employees with an adequate opportunity for reflection and for presentation of opposing viewpoints."

4. "Dual unionism" is generally defined as any act by a union member, on behalf of a rival union to undermine, and/or substitute the member's union. *Local 1199, Drug, Hospital and Health Care Employees Union v. Retail, Wholesale and Department Store Union,* 671 F.Supp. 279, 285 (S.D.N.Y.1987).

5. "Disaffiliation" is defined as "[w]ithdrawal of a local union from a national union or withdrawal of a national union from a parent

federation." *Local 1199 v. Retail, Wholesale, and Dept. Store Union,* 671 F.Supp. 279, 286 (S.D.N.Y.1987), quoting, *Labor Relations Reporter (BNA),* LRX 198 (1987).

6. Note that it appears to be well settled that imposing a trusteeship for the *sole* purpose of preventing disaffiliation is not a proper purpose under § 462. *Cape,* 598 F.Supp. at 1071; *Boilermakers,* 673 F.Supp. at 203.

Plaintiff also cites *Navarro v. Gannon*, 385 F.2d 512 (2nd Cir.1967), in which the court upheld an injunction in favor of a local against the parent organization's decision to assume control over local meetings after members began to engage in discussions about disaffiliating. The court held that § 101(a)(2) expressly ensures members' right to engage in such discussions and that the Local's right to impose reasonable rules to maintain order did not extend as far as to permit the parent organization to take over under these circumstances. 385 F.2d at 519.

Defendants, however, contend that an analogy to situations in which a union is attempting to disaffiliate is improper because the issues involved in a disaffiliation are not comparable to a threatened raid. Per Defendants, the raid in this case is an external threat that jeopardizes IBT's bargaining status, whereas disaffiliation only implicates internal governance concerns.

In support, Defendants cite the Southern District of New York's analysis regarding the issues involved in disaffiliation versus dual unionism:

> The distinction between dual union activity and advocacy of disaffiliation is particularly significant with regard to their effect on the collective bargaining relationship, and, consequently, on the legitimacy of adverse union action in response to each of those activities. Dual unionism impairs the ability of a union to carry out its collective bargaining responsibilities by diminishing its authority as bargaining representative. On the other hand, disaffiliation efforts unaccompanied by dual union activity may have little effect on the collective bargaining relationship. It is precisely this distinction that was drawn by the Court in *Tile, Marble & Terrazzo Workers v. Granite Cutters Local 106*, 621 F.Supp. 1188 (E.D.N.Y.1985), aff'd, 805 F.2d 391 (2d Cir.1986).

*Local 1199 v. Retail, Wholesale, and Dept. Store Union*, 671 F.Supp. 279, 286 (S.D.N.Y.1987). Likewise, Defendants rely upon *Aircraft Mechanics Fraternal Association v. Transport Workers Union of America, Local 514*, 98 F.3d 597 (10th Cir.1996) in which that court also draws a distinction between "internal political struggle and critical debate which may unsettle current leadership" but does not compromise the union as an institution, and dual unionism, which "threaten[s] the continued existence of the union [itself]." 98 F.3d at 600, quoting *Mayle*, 866 F.2d at 147. The court in *Aircraft Mechanics* also noted that the Supreme Court has consistently Identified the primary purpose of § 101(a)(2) to be "assuring rank-and-file members' democratic participation in *intra*-union affairs, such as voting in union elections, standing for union office, and approving (or challenging) official union policies and decisions." *Id.* at 600.

Defendants argue that the facts of this case are actually more analogous to instances in which members or officials are accused of engaging in dual unionism, because like a raid, acts of dual unionism threaten the continued existence of the union. See *Mayle*, 866 F.2d at 146. In *Meader v. District Lodge # 4, Industrial Union of Marine and Shipbuilding Workers of America*, 786 F.Supp. 95 (D.Me. 1992), where several union officials were accused of soliciting signatures on behalf of a rival union and one official was also accused of filing an NLRB petition on behalf of the rival. The court stated:

> In exercising the right to engage in speech, assembly and expression, union officials as well as union members may not claim the protection of Title I when such conduct violates their responsibility toward the union as an institution or

interferes with the union's performance of its legal or contractual obligation. 786 F.Supp. at 101.

Defendants also cite the holdings in *National Assoc. of Letter Carriers v. Sombrotto*, 449 F.2d 915, 923 (2nd Cir.1971) and *Executive Board Local 1302 v. United Brotherhood of Carpenters and Joiners of America*, 477 F.2d 612, 614 (2nd Cir.1973) as instructive authority to support their claim that they are entitled to take any necessary steps to protect the IBT as the certified bargaining representative. In *Sombrotto*, one of the asserted purposes for imposing the trusteeship was to thwart the efforts of the branch's officers to petition the National Labor Relations Board (NLRB) for a new local area bargaining unit. Under the relevant provision of the Postal Reorganization Act, 39 U.S.C. § 1203(c), the court found that when an employee or labor organization seeks a new bargaining representative while still maintaining membership in the national union, they are not immune from discipline by the parent body as provided for in the union constitution. 449 F.2d at 923. The court further stated that a union "is entitled to protect itself, and actions taken toward this end appear to us directed toward a 'legitimate object' within the meaning of 29 U.S.C. § 462." *Id.*

Similarly, in *Local 1302*, the Court of Appeals found that imposing a trusteeship for the purpose of preventing a local from petitioning the NLRB for disaffiliation and separate certification as the bargaining representative for its members carried out the "legitimate objects" of the organization within the meaning of 29 U.S.C. § 462. The court based its decision on its finding that the trusteeship had been imposed in order to "preserve the integrity and stability of the organization" because the petition for disaffiliation would have detrimentally delayed pending collective bargaining negotiations and, thereby, constitute a failure of the union to carry out its duties to its members in a responsible manner. 477 F.2d at 614. The court was also concerned that other locals would attempt to disaffiliate and further undermine the bargaining process. *Id.*

Defendants argue that because Plaintiffs' refused to act in opposition to the raid, coupled with their attempts to negotiate for concessions as a prerequisite for their support, they effectively impeded the IBT's ability to oppose the raid. Therefore, as in *Sombrotto* and *Local 1302*, Defendants contend that this was justification enough for the imposition of a trusteeship.

Defendants also cite *Newman v. Local 1101, Communications Workers of America*, 570 F.2d 439 (2nd Cir.1978), arguing that Plaintiffs must demonstrate by clear and convincing evidence that Hoffa imposed the trusteeship in a purposeful and deliberate attempt to suppress dissent and that Plaintiffs' refusal to comply with Hoffa's instruction did not interfere with Plaintiff's fulfillment of their duties to the union. In *Newman*, a union steward was removed from his position by the local's Executive Committee following his vocal opposition to the local President's position on how upcoming collective bargaining negotiations should be handled. Plaintiff was known to be very critical of the local's management and he often expressed himself in leaflets and at members' meetings. Alleging that he had been unduly disruptive at a union meeting while the President was attempting to address the members, the Committee voted to remove plaintiff.

Plaintiff filed a complaint against the union and various officers alleging a violation of his free speech rights under § 101(a)(2). The district court granted plaintiff an injunction directing defendants to reinstate him. On appeal, however, the Second Circuit reversed.

The court noted the inherent conflict that develops when a union member dons the hat of union officer. The court expressed the opinion, however, that a member's obligations as an officer preclude him/her from acting in a manner that is inconsistent with management, when acting in an official capacity. Specifically, the court stated:

> Although a person is free as a union member to criticize mercilessly his union's management and its policies, once he accepts a union position obligating him fairly to explain or carry out the union's policies or programs, he may not engage in conduct inconsistent with these duties without risking removal as an official or employee (but not as a union member) on the ground that his conduct precludes his effective representation of the union. Unless the management of a union, like that of any other going enterprise, could command a reasonable degree of loyalty and support from its representatives, it could not effectively function very long. To obligate union leadership to tolerate open defiance of, or disagreement with, its plans by those responsible for carrying them out, would be to invite disaster for the union.

570 F.2d at 445. Although a union officer is free to exercise his/her free speech rights as a member, he/she "is also under a duty as a representative of the union's management to cooperate with it and to implement its directives." *Id.*

■ In order to ensure that the proper balance is struck the court stated that union leadership can remove an officer whose exercise of free speech rights impairs his ability to perform as required, as long as the removal does not prohibit the member from continuing to take a contrary position without reprisal:

> The inquiry in each case, therefore, must be to determine whether a mem-

ber's opposition to the union's programs or policies may be reasonably viewed as precluding him from acting effectively as its representative, and whether his removal from his official position would tend to prevent him or others from exercising their rights as members under Title I of LMRDA. The inquiry requires a close analysis of the nature of the union position in question, the extent of the allegedly unlawful discipline, and the motivation behind the removal.

*Id.* The court went on to state that a court should not intervene unless there is clear and convincing evidence that union leadership acted for the purpose of interfering with a union officer's exercise of free speech rights as a member:

> Only where there is clear and convincing proof that the union action in this case [sic] the decertification of Newman as a job steward [sic] was "part of a purposeful and deliberate attempt by union officials to suppress dissent within the union," [*Schonfeld v. Penza,*] 477 F.2d [899,] 904 [(2nd Cir.1973)], should the federal court act under LMRDA. Otherwise we are bound to adhere to our longstanding policy against intervention in the internal affairs of unions, which are best "left to the officials chosen by the members to manage those operations except in the very limited instances expressly provided by the Act." *Gurton v. Arons,* 339 F.2d 371, 375 (2d Cir. 1964).

*Id.* at 445–446.

The court held that plaintiff failed to make a showing that the Committee acted for the purpose of stifling or otherwise discouraging him from expressing himself; that is, he was accorded the full rights of his union membership and he had not been fined or otherwise disciplined for his contrary views. *Id.* at 448.

Both parties' arguments regarding whether Plaintiffs' actions are protected speech and whether or not Defendants' reasons for imposing the trusteeship constituted a proper purpose, as defined by § 462, are well reasoned. The Court is persuaded, however, that Defendants are correct in their assertion that Plaintiffs' refusal to respond to the raid in the manner directed by Hoffa is not protected speech and, therefore, the trusteeship was not imposed for an improper purpose.

Thus far, the Sixth Circuit has not taken a position on this issue. However, the Court finds *Newman* instructive. The express language of § 101(a)(2) and the case law interpreting it indicates that the right to exercise free speech within a union must be balanced with the union leadership's right to exercise reasonable judgment in conducting the affairs of the union. Indeed, § 101(a)(2) only affords members free speech rights to the extent that it does not conflict with the union's right to adopt and enforce reasonable rules. Likewise, the Supreme Court has held that § 101(a)(2) does not require unions to recognize the same stringent standards that are imposed by the First Amendment. *United Steelworkers of America v. Sadlowski*, 457 U.S. 102, 109, 102 S.Ct. 2339, 72 L.Ed.2d 707 (1982).

It follows that where, as here, a member wears the dual hat of member and union officer, the member's rights as a member must be balanced with his/her obligations as an officer. The test enumerated in *Newman* aptly strikes that balance. Applying *Newman* to this case, the Court must determine: 1) whether Plaintiffs' refusal to oppose the PFAA raid in the manner that Hoffa directed was *reasonably* viewed as precluding them from acting effectively as representatives of the Board and 2) whether Plaintiffs have set forth clear and convincing evidence that the imposition of the trusteeship in response to Plaintiffs' refusal was part of a purposeful and deliberate attempt to chill Plaintiffs' and others' exercise of free speech rights.

The Court has already determined that substantial evidence supports Defendant's contention that Hoffa had a reasonable belief that the threatened raid created an urgent situation; it was viewed as a genuine threat to IBT's certified bargaining status. Under those circumstances, Plaintiffs' unwillingness to take the aggressive approach that Hoffa viewed as a necessary response to the threat could reasonably have been viewed as precluding Plaintiffs' from acting effectively as representatives of Local 2000. The evidence clearly indicates that Hoffa was of the opinion that Plaintiffs' proposed response would not be an effective means of responding to the raid.

As for the second prong, Plaintiffs have not presented any evidence that the purpose of imposing the trusteeship was to discourage Plaintiffs, as members, from expressing their opinion about the raid or the appropriate response to it. Nor is there any evidence that Plaintiffs' were, in fact, precluded from or retaliated against for criticizing Hoffa's position. Therefore, as in *Newman*, the Court does not find that Defendants infringed Plaintiffs' rights.

Based upon the foregoing, the Court finds that Plaintiffs have not demonstrated a substantial likelihood of success, irreparable injury, or that the balance of harms weighs in their favor. Therefore, their Motion for Preliminary Injunction is denied. The Court further finds that Plaintiffs have not alleged facts that would entitle them to relief on either their claim that their free speech rights were violated or that the trusteeship was imposed in violation of the LMRDA. Therefore, Defendant's Motion to Dismiss is granted on

those claims and Plaintiff's Motion for Partial Summary Judgment is denied.[7]

### B. Defendants' Motion to Strike

 Pursuant to FRCP 12(f)[8], Defendants move to strike Local 2000 as a party plaintiff because the former officers are not authorized to bring or maintain this action on behalf of Local 2000. The Court agrees.

Plaintiffs were removed from office on July 1, 2002 and Molly Reiley was appointed Temporary Trustee on June 30, 2002. The union constitution expressly empowers an appointed trustee to "take full charge of the affairs of the Local Union or other subordinate body, to remove any or all officers and appoint temporary officers at any time during the trusteeship, and to take other such action as in his [or her] judgment is necessary for the preservation of the Local Union or other subordinate body and its interests." Art VI, § 5(b).

In *Sawyers v. Grand Lodge, IAM*, 279 F.Supp. 747 (E.D.Mo.1967), ousted officers of a local filed suit challenging their suspensions and the imposition of a trusteeship. The officers also named the local as a party plaintiff. Finding that there was no evidence that the membership of the local authorized joining the complaint, the court granted defendants' motion to strike. 279 F.Supp. at 754.

As in Sawyers, Plaintiffs here have not presented any evidence that the Local 2000 membership, via Trustee Reiley or otherwise, authorized its joinder in this action. Further, none of the cases cited by Plaintiff directly or impliedly holds that terminated union officials are, thereafter, at liberty to file suit on behalf of a Local union without the express authority of the current governing body or the membership. Also, Plaintiffs' reliance upon Section 14(A)(5) of the Local 2000 bylaws is also misplaced because that provision only empowers a *sitting* union Executive Board to institute legal proceedings on behalf of the Local Union, its officers, employees or members. Although the validity of the individual Plaintiffs' ouster is in dispute, at this time Plaintiffs are not recognized as members of the Executive Board and, therefore, they are not at liberty to act in that capacity.

### V. CONCLUSION

The Court DENIES Plaintiffs' Motion for Preliminary Injunction; DENIES Plaintiffs' Cross–Motion for Partial Summary Judgment; GRANTS Defendants' Motion to Dismiss; and, GRANTS Defendants' Motion to Strike. Count II remains in this litigation and all Plaintiffs, with the exception of Teamsters Local Union No. 2000.

This Order also disposes of Plaintiffs' Motion for Expedited Consideration of Motion for Preliminary Injunction. It is deemed MOOT.

**IT IS SO ORDERED.**

---

7. Count 2 of Plaintiffs' complaint, which alleges a violation of § 466, based upon Defendants' expenditures under the trusteeship, remains.

8. FRCP 12(f) states:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.