**Geraldine PAPE, Plaintiff,**

v.

**LOCAL 390 OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants.**

**No. 03–20250–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

March 25, 2004.

---

Donald I. Bierman, Bierman Shohat Loewy & Klein, Miami, Phillip C. Landrigan, Landrigan & Murtagh, White Plains, NY, for Geraldine Pape, as president of Teamsters Local Union No. 390 and individually, plaintiff.

Howard S. Susskind, Sugarman & Susskind PA, Coral Gables, G. William Baab, Baab & Denison, Dallas, TX, for International Brotherhood of Teamsters, Rolando Pina, defendants.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALTONAGA, District Judge.

THIS CAUSE came before the Court upon Defendants, International Brotherhood of Teamsters, AFL–CIO ("IBT"), Teamsters Local 390 ("Local 390"), and Rolando Pina's ("Pina") Motion for Summary Judgment (**D.E.21**). The Court heard oral argument on Defendants' Motion at the pretrial conference held on January 30, 2004. Having carefully considered the Motion, argument by counsel, and pertinent portions of the record, the Court finds that summary judgment in favor of Defendants is warranted.

## I. BACKGROUND

This is a case brought under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401, *et seq.;* the Labor Management Relations Act ("LMRA")[1], 29 U.S.C §§ 141, *et seq.;* and the Constitution of the International Brotherhood of Teamsters, AFL–CIO ("International Constitution"). Plaintiff, Geraldine Pape ("Pape"), the former president of Local 390, claims she was wrongfully removed from her elected office after Defendant, IBT, imposed an emergency trusteeship over Local 390. In her Complaint, Plaintiff alleges seven different causes of action.[2] She alleges that Defendants' pursuit of investigations, charges, disciplinary and trusteeship proceedings on false or non-existent evidence was pretextual and violated her rights under: 1) Title I of the LMRDA, 29 U.S.C.

1. The LMRA confers this Court with jurisdiction to hear Plaintiff's claims based on alleged violations of the International Constitution. *See* 29 U.S.C. § 185(a); *Wooddell v. Int'l Broth. of Elec. Workers, Local 71,* 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991); *Int'l Union of Electronic, Elec., Salaried, Mach. &*

*Furniture Workers, AFL–CIO v. Statham,* 97 F.3d 1416 (11th Cir.1996).

2. Rather than label her claims as separate counts, Plaintiff refers to her claims as "causes of action." For case of reference, each cause of action is identified as a separate count.

§ 411(a)(1)-(2) (Count I); 2) LMRDA § 609, 29 U.S.C. § 529 (Count II); and 3) Articles VI, Section 5, and XIX, Section 7(a)(2)-(3), (5)-(6), (8) and (10) of the International Constitution (Count III).

Count IV alleges Defendants imposed a trusteeship in order to deny Plaintiff a full and fair hearing on the disciplinary charges filed against her. According to the Complaint, Defendants' investigation and cancellation of her scheduled disciplinary hearing constitute a violation of her rights provided by 29 U.S.C. §§ 411(a)(1)-(2) and (5). As to Count V, Plaintiff alleges that Defendants imposed an emergency trusteeship in violation of the International Constitution, particularly Articles VI, Section 5 and XIX, Sections 7(a)(2)-(3), (5)-(6), (8) and (10).

Count VI asserts that the grounds for the trusteeship were pretextual and were calculated solely to interfere with Plaintiff's performance of collective bargaining agreements and other duties. Plaintiff maintains Defendants imposed the trusteeship in retaliation for her perceived lack of support for certain candidates, as well as her opposition to a program known as "Project RISE,"[3] in violation of Title III of the LMRDA, 29 U.S.C. § 462–464. Lastly, Plaintiff alleges in Count VII that Defendants' actions were calculated to tortiously interfere with her contractual relations with Local 390.

## II. UNDISPUTED FACTS[4]

At all relevant times, Defendants, Local 390 and IBT, have been labor organizations within the meaning of 29 U.S.C. §§ 152(5) 185, and 402(I) and (j). Pape was elected President of Local 390 in 1998, and assumed office on March 1, 1998. Pape remained in office until her removal on October 22, 2002. She was a member in good standing of Local 390 until she was issued a withdrawal card in April 2003. The rights and obligations of Plaintiff as an officer and member of Local 390 were governed by the International Constitution and applicable statutes.

### A. Disciplinary Charges Against Geraldine Pape

On March 3, 2002, internal disciplinary charges were filed by IBT Representative, James Blanchard, against Plaintiff and ten other individuals. Blanchard made three specific charges against Plaintiff. The first charge alleged that:

> From on or about July 1996 to on or about November 1997, Sister Pape knowingly associated with Clarence Lark, Jr.,[5] the former principal officer of IBT Local 390. From approximately July 1, 1996 through September 16, 1996, during which time Lark was suspended from union membership, Sister Pape knowingly and deliberately associated with Lark for the purpose of discussing union business, including but not limited to, the IBT trusteeship of Local 390. From approximately September 16, 1996 through November 1997, Sister Pape continued to knowingly associate

---

**3.** While not specifically defined by the parties, Plaintiff's Complaint and Response Memorandum indicate "RISE" is a program proposed by IBT for replacing an independent review board. Plaintiff maintains the investigation of Local 390 by RISE "would be an early demonstration of the program's effectiveness." (Pl.'s Mem. Opp'n at 3).

**4.** Unless otherwise stated, the undisputed facts are taken from the "Statement of Uncontested Facts Which Will Require No Proof at Trial" contained in the parties' Pretrial Stipulation (D.E.42).

**5.** On September 16, 1996, Clarence Lark, Jr. was barred from employment and membership in the Teamsters by written decision of then IBT General President, Ron Carey.

with Lark after he had been permanently barred from the union.

(Pl.'s Ex. G).[6]

The second charge against Plaintiff alleged:

From on or about March 1996 through September 1996, Sister Pape was employed as an appointed business agent of Local 390 and during that time committed acts and encouraged others to commit acts to disrupt and interfere with the IBT imposed trusteeship of Local 390, including but not limited to, continuing to seek the advice and guidance of Lark who had been removed by the trustee on local union matters; participating in the drafting of a document distributed to Local 390 members that assailed the credibility of the trustee and the trusteeship; and providing transportation for a witness who testified on behalf of Lark before an IBT hearing panel.

(Pl.'s Ex. G).

The third and final charge alleged:

Sister Pape violated Article XIX, § 7(5) of the IBT Constitution through conduct that disrupted, interfered with, or induced others to disrupt or interfere with the performance of the union's legal or contractual obligations, in that:

From on or about August 1999 to September 1999, Sister Pape caused a false entry (an employee's start date of employment with the Local Union) to be recorded in a document submitted to the Central States Health and Welfare Fund so that Pirty Lee Jackson could obtain medical coverage and the Local could

avoid making the full amount of contributions due and owing to the Central States Health and Welfare Fund.

(Pl.'s Ex. G).

Robert Belans, Charles Byrnes and W.C. Smith were appointed to hear the charges against Plaintiff. According to Plaintiff, Belans told her that this hearing panel had been instructed to find her guilty of the charges. Plaintiff also maintains that IBT representative, Vincent Hickman, and IBT Vice President, Tyson Johnson, admitted that Defendants were engaged in a plan to charge and convict her based on her purported association with Lark. A hearing on the charges[7] was scheduled for May 14, 2002, but was subsequently adjourned without a new date. Since the adjournment, no hearing on James Blanchard's charges against Plaintiff has been held or rescheduled.

### B. Notice of Emergency Trusteeship

Pursuant to Notice dated October 22, 2002, IBT imposed an emergency trusteeship over Local 390. The Notice advised Local 390 members that an investigation had been conducted concerning complaints and "allegations of prohibited association between certain officers and members of Local 390 and an individual who had been barred from the Union." (Def.'s Ex. B).[8] The Notice identified four specific findings of the investigation.

The first finding recounted that a trusteeship had been previously implemented in 1996 after Clarence Lark, Jr. was removed from office. Also, during a federal criminal trial of Lark, witnesses testified

---

**6.** The charges were identified and agreed to in the parties' Pretrial Stipulation. Plaintiff submitted Exhibit G in support of her Opposition, and Defendant has not disputed the contents of the document.

**7.** Plaintiff refers to these charges as "internal disciplinary charges." The hearing scheduled

with respect to these charges is distinct from the hearing on the trusteeship.

**8.** The October 22, 2002 Notice was identified and agreed to in the Pretrial Stipulation. Plaintiff has not disputed the contents of the Notice.

that Pape had been selected by Lark to run Local 390, "to ensure his continued control over the Local." (Defs.' Ex. B). The second finding reported the "substantial credible evidence that Local 390 President Pape and several other officers and members had associated with Lark after he had been permanently barred from the Union." (Defs.' Ex. B). The second finding also notes that the investigation revealed telephone records, corroborated by witnesses, showing Pape and others continuing to have contact with Lark concerning Union affairs. (*Id.*).

The third finding of the investigation explained that Pape filed charges against three members who had cooperated in the investigation, as well as a political opponent, which a subsequent investigation revealed had little factual support. Pape's filing of charges was considered as having been done to "delay and undercut the evidence cited in the Report of the Investigation," and for purposes of retaliation. (*Id.*). The fourth finding concerned the Union's receipt of complaints against Pape concerning her failure to properly represent members, as well as her "[failure] to properly refer drivers to movie and other productions and, instead . . . making referrals based on nepotism and favoritism." (*Id.*).[9]

Within the Notice, the General President of IBT appointed Defendant, Rolando Pina, to serve as temporary trustee, and concluded:

These actions, individually and taken as a whole, demonstrate (1) that the affairs of the Local Union are not being conducted in the best interest of the membership, (2) that the affairs of the Local Union are being conducted so as to jeopardize the interests of the International Union and its members, (3) that the imposition of a trusteeship is necessary to correct corruption and to assure that the Local Union properly represents its members and performs its duties as their collective bargaining representative, and (4) that a temporary trusteeship is necessary to prevent action by the Local Union which interferes with carrying out the legitimate objects of the Local Union and the International Union.

These actions further demonstrate that an emergency trusteeship is necessary to prevent the continued loss of work and employment for members of Local 390 and to ensure that a fair hearing can be held on the pending charges against Local 390 officers and members. It appears in this respect that many of the actions taken by the Local Union have been in retaliation for the participation of members in the investigation and that these actions will continue if the current officers are allowed to remain in control of the Local Union.

(Defs.' Ex. B).

### C. Continuation of the Emergency Trusteeship

Plaintiff was removed from office and employment with Local 390 upon implementation of the emergency trusteeship on October 22, 2002. A hearing regarding continuation of the trusteeship was held in Miami, Florida, beginning on December 3, 2002. Plaintiff was present at and participated in this hearing. The Panel members were William C. Smith, III, Leticia Acosta, and Malcolm Smith. William C. Smith, III had previously been appointed to serve on the panel for Plaintiff's disciplinary charges.

The three member Trusteeship Panel subsequently issued a unanimous Recommendation concerning continuation of the

---

**9.** The details of Local 390's work in the movie industry are only addressed briefly in this Order to the extent they are pertinent to the issues raised.

trusteeship over Local 390. In its Recommendation, the Panel commended the manner in which the hearing participants had conducted themselves and noted that at the end of the hearing, "[t]he parties stated ... that everyone was given adequate opportunity to present their evidence and arguments." (Defs.' Ex. D at 2).[10] Moreover, the Panel provided the parties an opportunity to submit post-hearing briefs due to the "massive amount of documentary evidence entered into the record." (*Id.*). Plaintiff was allowed to review several reports that had been submitted by the investigators as well as time to refute statements and allegations contained within the reports. (*Id.*). Despite having been given an extension of time, Plaintiff did not submit a post-hearing brief. Instead she filed the present lawsuit, maintaining that the Complaint was her brief. (*Id.*).

### 1. Movie Industry Work

In its Recommendation, the Panel noted, with respect to the dispatch of movie workers and selection of captains,[11] that "[t]he evidence produced at the hearing indicated that Local 390 has not followed a consistent pattern with regard to either dispatch of employees or the appointment of captains." (*Id.* at 7). Specifically, "LaBorde and Rienzo testified that Pape arbitrarily refused to appoint captains who

refused to rent equipment owned by the Lark family or who did not support Pape politically." (*Id.* at 7–8). Observing that Plaintiff had not rebutted the testimony of LaBorde or Rienzo, the Panel found that:

> Taken as a whole, the Panel believes the evidence clearly indicated that Pape, and those Local 390 agents acting at her direction, acted arbitrarily in deciding who would and would not be allowed to work as captains on various productions. Furthermore, the evidence indicates that Pape made such decisions based on the personal and political loyalties of those in the pool of prospective captains. Such conduct had a detrimental impact on the membership, and had the potential for future adverse impact were the misconduct permitted to continue.

(*Id.* at 8).

The Panel also determined that Plaintiff did not operate the movie division in a democratic manner, as "[t]he members never had substantial input in contract negotiations and ratification votes often were not held." (*Id.*) According to the Panel's Recommendation, Rienzo testified that Local 390 had requested Rienzo rent equipment owned by the Lark family, and Rienzo was retaliated against by Pape for his refusal to do. The Panel found Rienzo's testimony credible: "Pape cross-examined Rienzo and then re-called him as a witness

---

**10.** The Recommendation was identified and agreed to in the Pretrial Stipulation. While Plaintiff disputes the conclusions made by the Panel, she does not dispute the contents of the document.

**11.** With respect to the selection of captains, the Panel explained:

> It is the custom in this industry for each production to have a transportation "captain." The nature of the industry also requires the producers (who generally act as the employer representative in labor relations matters in this industry) to rent equipment for each particular production. Such equipment includes vans for transporting

cast and crew, larger trucks for transporting other equipment, and large trailers that are used for various functions on the set. Rental of this equipment is very profitable for the owner of the equipment. The transportation captain, ... often makes the day-to-day decisions on what rental companies will be used to procure equipment for the production.

> The industry has two basic methods for appointing the transportation captain on each production. This assignment can be made by either the Local Union or by the producer.

(Defs.' Ex. D at 5).

during her case in opposition to the trusteeship. At neither point did she elicit any testimony which put [Rienzo's] version into doubt." (*Id.* at 10).

The Panel found the reasons given by Pape for filing disciplinary charges against Rienzo pretextual. (*Id.* at 11). As a result, the Panel concluded that, "Pape exercised her control over the appointment of captains with motives that do not appear to have kept the best interests of the membership as top priority. This type of conduct is a serious problem, and if left unchecked could seriously harm the Local Union." (*Id.*).

A collective bargaining agreement from the production of a movie was submitted into evidence at the hearing. (*Id.*). In its Recommendation, the Panel noted it had received testimony that the collective bargaining agreement contained a sub-standard contract provision that could lead to serious implications for Teamsters throughout the country in the movie industry. (*Id.*).

### 2. Plaintiff's Conduct during Investigation of Local 390

The Panel further justified the trusteeship in its Recommendation based on Plaintiff's conduct during the investigation. In particular, the Panel concluded: "Pape's primary concern during [the investigation] was protecting her own interests rather than protecting the Local Union's interests by cooperating with the investigation." (*Id.* at 12). To support its conclusion, the Panel cited to Plaintiff's proffered explanation of phone records reflecting calls between numbers registered to Lark and to Pape, occurring after Lark had been barred from the union. The Panel did not find Plaintiff's explanation credible, as she could only speculate that someone else in her household had communicated with Lark or his household, particularly when the

Panel believed Plaintiff could have presented corroborating witnesses at the hearing and failed to do so. (*Id.* at 13).

After finding several examples of retaliation against individuals who had cooperated with the investigation, the Panel observed that it was not "difficult to draw the inference from the timing and nature of Pape's charges against [those individuals] that they were intended to retaliate against them for their assistance in the IBT investigation." (*Id.* at 14). The Panel summarized its conclusion as follows:

> The Panel believes that the movie division in Local 390 has not been managed in a proper manner under Pape's administration. The Panel also believes that Local 390 officers deliberately impeded the IBT's investigation and this trusteeship proceeding. Also, as discussed above, the Panel believes that Local 390's officers, particularly its President, have retaliated against individuals who cooperated with the IBT's investigation. The Panel is confident that these problems and the other problems addressed in this recommendation threaten the well-being of Local 390 and justify the imposition and continuation of the trusteeship at this time.

> Although not directly relevant to the narrow issue of whether the trusteeship is appropriate, the Panel recommends that the Trustee and other representatives appointed by the International Union to assist Local 390 convene a meeting of the movie division members to air these members' concerns in one open forum dedicated solely to their unique issues. It would be beneficial for clear, easy to apply rules to be laid down that will determine how work and positions are assigned in the movie division. It may even be useful to have officials from other Local Unions with experience in the movie industry to participate in this

forum and offer views and suggestions where appropriate. The Panel encourages the International Union to consider this.

Finally, the Panel recognizes that numerous members of Local 390–members who care enough about their Local Union to attend a 17 hour long hearing-spoke passionately in support of the elected leaders of Local 390, particularly of Gerry Pape, Don Marr, and Gary Onslager. Of those who attended and spoke at the hearing, most of the non-movie division members spoke very highly of the quality of representation provided by Pape, Marr, and Onslager. Those concerns have not fallen upon deaf ears with this Panel. The Panel emphasizes once again that this recommendation is not a statement that the elected officials were incompetent representatives. However, their apparent misuse of their authority to further their own goals justifies continuing the trusteeship at this time.

(*Id.* at 14–16).

### D. General President's Reasons for Continuing Trusteeship

On April 14, 2003, IBT General President, James P. Hoffa, issued a decision adopting the Recommendation of the Panel and continuing the trusteeship over Local 390. The General President adopted the following findings by the Panel:

1. The Local Union often acted improperly in deciding who would serve as captains in the movie division of the Local Union. These decisions were made based on personal and political loyalties, and these problems had the effect of jeopardizing the Local Union membership's continued opportunities to work in this industry.

2. There was substantial evidence that Local Union President Pape retaliated against opponents of former Local Union President Clarence Lark, who had been expelled from the Union pursuant to [Independent Review Board] charges.

3. The Local Union agreed to substandard working conditions, which threatened the standards established throughout the International Union in the movie industry.

4. The Local Union did not administer its movie division in a democratic manner.

5. The Local Union's officers obstructed an investigation being conducted by the International Union into the alleged improprieties within the Local Union. There was substantial evidence that in so doing, they lied to the International Union's representatives and retaliated against those individuals who cooperated with the International Union's investigation.

(Defs' Ex. E).[12]

Based on these findings, the General President determined the trusteeship must be continued to "ensure that Local 390 is run in accordance with applicable law and for the benefit of the membership." (*Id.*). General President Hoffa specifically concluded continuation of the trusteeship was "necessary to restore the Local Union's ability to represent its members effectively and in accordance with the International Constitution." (*Id.*).

General President Hoffa noted the trusteeship was imposed pursuant to Article VI, Section 5 of the International Constitution. (*Id.*). Article VI, Section 5(a) of the International Constitution provides, in pertinent part, that:

**12.** According to the Pretrial Stipulation, the April 14, 2003 decision was identified and agreed to. Plaintiff does not dispute the contents of this document.

If the General President has or receives information which leads him to believe that any of the officers of a Local Union or other subordinate body are dishonest or incompetent, or that such organization is not being conducted in accordance with the Constitution and laws of the International Union or for the benefit of the membership, or is being conducted in such a manner as to jeopardize the interests of the International Union or its subordinate bodies, or if the General President believes that such action is necessary for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or preventing any action which is disruptive of, or interferes with the performance of obligations of other members or Local Unions under collective bargaining agreements, or otherwise carrying out legitimate objects of the subordinate body, he may appoint a temporary Trustee to take charge and control of the affairs of such Local Union or other subordinate body; provided, however, that before the appointment of such temporary Trustee, the General President shall set a time and place for a hearing for the purpose of determining whether such temporary Trustee shall be appointed; and further provided that where, in the judgment of the General President, an emergency situation exists within the Local Union or other subordinate body, the temporary Trustee may be appointed prior to such hearing, but such hearing shall then commence within thirty (30) days and decision made within sixty (60) days after furnishing of the transcript of testimony; and further

provided that in all cases the Local Union or other subordinate body shall be advised of the reason for the appointment. Adequate notice at least ten (10) days prior to the date of the hearing shall be given to the Local Union or other subordinate body involved.

(Deaner Aff. at Ex. A).[13]

Article VI, Section 5(b) of the International Constitution also empowers the trustee as follows:

The Trustee shall be authorized and empowered to take full charge of the affairs of the Local Union or other subordinate body, to remove any or all officers and appointed temporary officers at any time during his Trusteeship, and to take such other action as in his judgment is necessary for the preservation of the Local Union or other subordinate body and its interests. The terms of office or officers so removed shall terminate as of the date of removal.

(*Id.*).

## III. *LEGAL ANALYSIS*

### A. *Summary Judgment Standard*

Under Fed.R.Civ.P. 56(c), a motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court explained the movant's burden in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) as follows:

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for dis-

---

**13.** The International Constitution was identified and agreed to in the Pretrial Stipulation of the parties.

covery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 322, 106 S.Ct. 2548. The Court further stated that "Rule 56(c) therefore requires a non-moving party to go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548.

By its very terms, this standard provides that the mere existence of *"some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An issue is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Allen v. Tyson Foods,* 121 F.3d 642, 646 (11th Cir.1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen,* 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party, and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Allen,* 121 F.3d at 646.

While the burden on the movant is great, the non-moving party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is "merely colorable" or "not significantly probative" is not enough. *Id.; see also Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir.1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment). Moreover, while otherwise admissible evidence may be submitted in inadmissible form at the summary judgment stage, inadmissible hearsay may not be used to defeat summary judgment when hearsay will not be available in admissible form at trial. *See McMillian v. Johnson,* 88 F.3d 1573, 1584–85 (11th Cir.1996); *Gaston v. Home Depot USA, Inc.,* 129 F.Supp.2d 1355, 1361 (S.D.Fla.2001).

In considering a motion for summary judgment, the Court "must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505. In other words, a court must take into account the "clear and convincing" standard of proof in ruling on a motion for summary judgment, if that standard will be applicable at trial. *Id.* Thus, "the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying [the clear and convincing] standard could reasonably find for either the plaintiff or the defendant." *Id.* And, the Supreme Court has noted that clear and convincing evidence is evidence which "'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the fact finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" *Cruzan v. Director,*

*Missouri Dep't of Health,* 497 U.S. 261, 286 n. 11, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990) (quoting *In re Jobes,* 108 N.J. 394, 529 A.2d 434, 441 (1987)).

### B. Issues Presented

Defendants maintain Pape's claims are centered on her allegations that the trusteeship was wrongfully implemented and continued, and that she was wrongfully removed from office and employment with Local 390, in violation of the LMRDA, the LMRA, and the IBT Constitution. In her opposition, Plaintiff asks the Court not to examine "the imposition of the emergency trusteeship in a vacuum." According to Plaintiff, the primary issue presented is "whether there exists evidence from which a reasonable inference may be drawn that the bad faith conduct of internal disciplinary proceedings tainted the alternative means chosen by defendants to effect plaintiff's removal, *i.e.,* the 'emergency' trusteeship." (Pl.'s Mem. Opp'n at 1–2).

The thrust of Plaintiff's seven claims in the Complaint is that she has been harmed by the imposition of a trusteeship on Local 390 that was based on false or non-existent evidence, and thus the trusteeship served as a pretext to effectuate Defendants' scheme to remove her from office. Regardless of Plaintiff's theory regarding the true reason the trusteeship was implemented (e.g., retaliation), each cause of action is simply another way of stating that the trusteeship was invalid because it was imposed for an improper motive. *See e.g., Morris v. Hoffa,* Case No. Civ. A. 99–5749, 2001 WL 1231741, at *10 (E.D.Pa. Oct. 12, 2001) (finding plaintiff's claim under Title I of the LMRDA, for the alleged violation of plaintiff's right to free speech, was cast as one challenging the unlawful imposition of trusteeship); *Farrell v. Int'l Bhd. of Teamsters,* 888 F.2d 459, 462 (6th Cir.1989) (holding the court must first address question of validity of trusteeship in case where plaintiff's Title I claim related to control of local by trustee). Thus, the analysis is properly framed within the context of the validity of the trusteeship.

The LMRDA governs the implementation of trusteeships by labor organizations and sets forth the purposes for their implementation as follows:

> Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

29 U.S.C. § 462. Moreover, the LMRDA provides that:

> In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period **except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title.**

29 U.S.C. § 464(c) (emphasis added).

■ Under the LMRDA, IBT validly imposes a trusteeship on Local 390 if IBT: 1) complies with the IBT's constitutional provisions; 2) imposes the trusteeship for

a permissible purpose under the LMRDA; and 3) provides a fair hearing. *See Int'l Bhd. of Boilermakers v. Local Lodge D238 of the Cement, Lime, Gypsum & Allied Workers Div. of the Int'l Bhd. of Boilermakers*, 865 F.2d 1228, 1234 (11th Cir. 1989). If IBT can satisfy these three elements, the trusteeship is presumptively valid under 29 U.S.C. § 464. *Local Lodge D238*, 865 F.2d at 1236; *Markham v. Int'l Assoc. of Bridge Structural & Ornamental Iron Workers*, 901 F.2d 1022, 1025 (11th Cir.1990). The Eleventh Circuit has read 29 U.S.C. § 464 to state explicitly that a trusteeship enjoys a presumption of validity if imposed *after* a hearing is held or is ratified. *Markham*, 901 F.2d at 1028 (stating also "there are no 'automatic' procedural rules rendering the trusteeship invalid absent a dire emergency").

While the Eleventh Circuit has defined the elements necessary for a trusteeship's presumption of validity, there are no cases analyzing the application of these elements outside the context of a preliminary injunction hearing. Case law from other circuits, however, serves to guide the Court's analysis. In a recent decision, a federal district court in Michigan stated:

> The Court must give deference to the judgment of a union official for the proffered reasons for imposing a trusteeship as long as there is "substantial evidence" to support the reasons offered. "If there is no substantial evidence which can be pointed to as justifying the decision of the union officials, then it is not likely that the imposition of the trusteeship was in good faith." ... [T]o constitute bad faith the **General President's actions** must be prompted by some interested or sinister motive, rather than an honest mistake as to his duty as General President.

*Teamsters Local Union No.2000 v. Hoffa*, 284 F.Supp.2d 684, 692 (E.D.Mich.2003) (citations omitted)(emphasis added).

To overcome the statutory presumption of validity, Plaintiff must present clear and convincing evidence that the IBT, through the General President's action, did not impose the trusteeship in good faith or for a statutorily permissible purpose under 29 U.S.C. § 462. *Local Lodge D238*, 865 F.2d at 1236; *Markham*, 901 F.2d at 1025–1026. Plaintiff carries the burden to demonstrate dishonesty or bad faith as a result of the statutory presumption of validity in § 464(c). *Int'l Bhd. of Teamsters v. Local Union No. 810*, 19 F.3d 786, 790 (2d Cir.1994). A plaintiff challenging the validity of a trusteeship may prove bad faith by "showing that [the General President] acted contrary to the Union's best interests, acted in his [her] own self-interest, or that his [her] actions were so outrageous or unconscionable that even if they were in the best interests of the Union, they would constitute bad faith." *Id.* at 794.

The Court begins her analysis, therefore, by examining whether the trusteeship was imposed in accordance with requirements set forth in the Union's constitution and bylaws and whether it was authorized or ratified after a fair hearing. *Local Union 2000*, 284 F.Supp.2d at 684. If the trusteeship is found to be entitled to a statutory presumption of validity, then the remaining issue will be whether the Plaintiff has sustained her burden of showing by disputed facts that clear and convincing evidence exists that the trusteeship was imposed in bad faith or for an impermissible purpose.

*1. Defendant Satisfies Requirements for Obtaining Statutory Presumptions*

Preliminarily, the undersigned notes that in her written submissions, Plaintiff does not follow the framework implicit in the language of section 464 or the case law examining the validity of trusteeships under this section. Plaintiff instead focuses on the alleged bad faith conduct of the

investigation of her internal disciplinary charges and whether that conduct tainted the separate trusteeship proceedings. As a result, Plaintiff's Response Memorandum fails to adequately address the initial issue of whether the trusteeship is entitled to a presumption of validity. At oral argument, Plaintiff did suggest that Defendants are required to first establish they were acting in good faith in imposing the trusteeship before they are entitled to the statutory presumption of validity. According to Plaintiff, and without citing to any authority, Defendants must meet four criteria: 1) IBT acted in good faith in initiating the trusteeship proceedings, 2) proper notice was given, 3) IBT adhered to the constitution, and 4) the decision was based on substantial evidence.

■ The undersigned finds no support in any statute or decisional law for Plaintiff's position that Defendants have the burden of first establishing they acted in good faith in order to be entitled to the presumption of validity. Initially, Defendants need only establish that the procedural requirements of section 464 have been met to obtain the statutory presumption, at which point the burden shifts to Plaintiff to establish that Defendants did not act in good faith or for a statutorily permissible purpose. *Local Lodge D238*, 865 F.2d at 1236; *Markham*, 901 F.2d at 1025; *Local Union No. 810*, 19 F.3d at 790. Therefore, the Court examines whether there exist any material issues of fact as to Defendants' ability to meet the procedural requirements for the statutory presumption of validity.

### a. IBT complied with the provisions of the IBT Constitution.

■ Under the International Constitution, the General President is allowed to impose an emergency trusteeship prior to a hearing when in his or her judgment an emergency situation exists. (*See* Deaner Aff. at Ex. A); *Local Union No.2000*, 284 F.Supp.2d at 690. The International Constitution requires a hearing to commence soon after the trusteeship is imposed. (*See id.*). Further, notice of the reasons for the trusteeship must be provided to the local union. (*See id.*). Plaintiff does not dispute that the General President proceeded in accordance with the procedural requirements of the IBT Constitution.

What Plaintiff does dispute is whether an actual emergency in fact existed. However, whether an actual emergency existed prior to the hearing is not a question that the Court must decide. *Local Union No.2000*, 284 F.Supp.2d at 691; *see also Markham*, 901 F.2d at 1028 (stating that "there are no 'automatic' procedural rules rendering the trusteeship invalid '*ab initio*' if emergency did not exist prior to hearing."). Challenging the existence of an emergency is a direct challenge to whether the union has satisfied the procedural requirements only when a trusteeship is imposed *prior to a hearing*.[14]

---

**14.** Typically, the existence of an emergency is disputed when a local union seeks a preliminary injunction challenging the imposition of a trusteeship before a hearing is scheduled by the international union. *See e.g., Markham*, 901 F.2d at 1025 (In granting local union's motion for preliminary injunction, district court dissolved trusteeship because it found that absent an emergency, the trusteeship should not be imposed prior to a full and fair hearing); *Morris*, 2001 WL 1231741 at *4 (plaintiffs sought injunctive relief after emergency trusteeship was imposed but prior to hearing being held); *Massey v. Int'l Bhd. of Teamsters*, Case No. 03 C 2410, 2003 WL 21011823, *3 (N.D.Ill. May 5, 2003) (finding General President was in a better position than court to determine whether emergency existed and denying injunctive relief as plaintiff could not establish bad faith simply because emergency may have been based on incorrect facts); *Int'l Bhd. of Teamsters v. Local Union No. 810*, 19 F.3d 786, 790 (2d Cir.1994) (stating there is no rule under section 464(c) requiring that actual emergency exist for imposition of temporary trusteeship

While an emergency trusteeship was declared in the present case before a hearing, it is undisputed the trusteeship was later ratified after a hearing. Thus, any challenge to the existence of an actual emergency does not create an issue of *material* fact with respect to whether Defendants complied with the International Constitution. 28 U.S.C. § 464(c); *Markham*, 901 F.2d at 1028 (reading 28 U.S.C. § 464(c) to allow presumption of validity if trusteeship is later ratified by hearing); *Service Employees Intern. Union, Local No. 87 v. Service Employees Intern. Union, Local No. 1877*, 230 F.Supp.2d 1099, 1104 (N.D.Cal.2002); *see also Morris*, 2001 WL 1231741 at *6, n. 7 (finding that while plaintiffs alleged lack of good faith in establishing emergency trusteeship, they failed to allege procedural defects relating to post-hearing trusteeship).

■ Plaintiff further maintains that Notice of the emergency was insufficient and thus for this reason the trusteeship is also invalid. To support this position, Plaintiff merely states that the Notice of the trusteeship declaring an emergency was insufficient to inform her as to the basis for the trusteeship. (Pl's Resp. at 17). Plaintiff, however, fails to identify how the Notice was insufficient, or how it failed to comply with the provisions of the International Constitution. Plaintiff does not suggest that she was unable to prepare fully for the December hearing as a result of the purportedly insufficient Notice. Rather, Plaintiff's arguments again address the sufficiency of the grounds supporting the General President's finding that an emergency existed. As stated, whether or not a true emergency existed is left to the judgment of the General President under the International Constitution. (Deaner Aff. Ex. A). *See Int'l Bhd. of Teamsters v. Local Union 745*, 938 F.Supp. 1186, 1196 (S.D.N.Y.1996) (finding IBT's right to impose trusteeship prior to hearing under constitution became operative upon General President's good faith belief that emergency existed).

General President Hoffa advised Local 390 members of the reasons for the trusteeship in the October 22, 2002 Notice. The International Constitution allows for the imposition of a trusteeship by the General President and the requirements under the IBT were facially met by Defendants. Therefore, Defendants have met the first criterion for obtaining the presumption of validity, as Plaintiff has failed to raise an issue of material fact regarding Defendant's compliance with the International Constitution or other procedural requirements. *See Morris*, 2001 WL 1231741 at *5 ("A fair hearing demonstrating a proper purpose may subsequently justify the maintenance of the trusteeship, even if the imposition of the emergency trusteeship was initially defective."). The Court next examines whether the trusteeship was imposed for a permissible purpose under the LMRDA.

*b. The trusteeship was imposed for permissible purpose under the LMRDA.*

■ As discussed, Plaintiff does not specifically address whether the purposes identified by the General President for the trusteeship are or are not proper purposes under the LMRDA. While conceding that a trusteeship is valid if imposed for a purpose allowable under the LMRDA and if done in a procedurally correct manner, Plaintiff nonetheless contends:

> Issues of fact exist as to whether the declaration of the trusteeship was made in good faith, whether notice of the trusteeship was sufficient, whether there was substantial evidence to support establishing or maintaining the trusteeship and whether the circumstances sur-

prior to hearing and affirming denial of injunctive relief).

1313

rounding the bad faith pursuit of disciplinary charges infected the trusteeship proceedings.

(Pl.'s Mem. Opp. at 16). Plaintiff's Response focuses on the issues of bad faith surrounding her *disciplinary proceedings.* Moreover, Plaintiff's arguments challenge the evidence supporting the Panel's findings and conclusions, but do not dispute whether the purposes given by the General President fall squarely within those permissible purposes outlined by section 462 of the LMRDA.

After the hearing on December 3, 2002, General President Hoffa articulated that he was continuing the trusteeship in order to restore the Local Union's ability to represent its members effectively and in accordance with the International Constitution, permissible purposes under the LMRDA. 28 U.S.C. § 462; *see also Int'l Bhd. of Teamsters v. Local Union 745,* 938 F.Supp. 1186, 1197 (S.D.N.Y.1996) (finding General President's reason for imposing trusteeship—to stop undemocratic work referrals—as permissible purpose under section 462). No issues of fact have been raised regarding the truthfulness of *President Hoffa's* stated purpose. Therefore, no issues of fact have been presented as to the second procedural requirement for the statutory presumption of validity. The Court next examines the third requirement for the statutory presumption, that is, whether the trusteeship was ratified after a fair hearing.

*c. Defendants held a fair hearing on charges relating to necessity for trusteeship.*

█ A hearing is considered fair if it meets at least the following three requirements: 1) notice of charges, 2) presentation of evidence and witnesses, and 3) an opportunity for cross-examination. *Local Lodge D238,* 865 F.2d at 1236. Plaintiff has not challenged the fairness of the Trusteeship Panel's conduct of the De-

cember 3, 2002 hearing. Indeed, Plaintiff has not disputed the finding of the Trusteeship Panel that the parties were given "adequate opportunity to present their evidence and arguments." She has not disputed that she was provided sufficient notice of the charges. Plaintiff has failed to raise an issue of fact as to whether Defendants satisfied the procedural requirements under the LMRDA, and the trusteeship is therefore presumptively valid under section 464. *Local Lodge D238,* 865 F.2d at 1234. Having found that Defendants imposed the trusteeship in a procedurally correct manner so that the trusteeship is entitled to the statutory presumption of validity, the only question remaining is whether Plaintiff has presented any disputed facts that rise to the standard of clear and convincing evidence, to overcome the presumption.

*2. Plaintiff Has Failed to Meet her Burden for Overcoming the Presumptive Validity of the Trusteeship*

Plaintiff may overcome the presumption of validity provided by 29 U.S.C. § 464 by demonstrating through clear and convincing evidence that the trusteeship was not imposed for a statutorily permissible purpose or was imposed in bad faith. *See Markham,* 901 F.2d at 1025–1026.

*a. Plaintiff has failed to prove by clear and convincing evidence an absence of a proper purpose for imposing the trusteeship.*

█ In examining the validity of a trusteeship under the LMRDA, "[t]he proper role for the Court is solely to determine whether the [plaintiff] had demonstrated by 'clear & convincing proof that the trusteeship was not established or maintained in good faith.' And good faith must be assessed by reference to the purposes outlined in § 462 of Title 29." *Teamsters Local Union No. 406 v. Crane,*

848 F.2d 709, 713 (6th Cir.1988). In other words, review of IBT's intentions for imposing a trusteeship must be within the context of the purposes allowed in section 462. *Id.* at 714. The Sixth Circuit has explained: "Congress intended that decisions by international officials to impose trusteeships be upheld and not rejected on the basis of disputed facts or on disputes over the judgment or necessity for imposing a trusteeship." *Id.* at 715.

██ Courts have consistently held it improper for a court to substitute its own judgment for that of the General President, particularly when there is substantial evidence to support the General President's findings. *See e.g., Local Union 2000,* 284 F.Supp.2d at 692. Courts have also noted that "the establishment of a single purpose for establishing the trusteeship is sufficient to determine that the trusteeship is valid under Title III, even in the presence of additional allegedly improper motives." *See Morris,* 2001 WL 1231741 at *7 (citing *Mason Tenders Dist. Council of Greater New York,* 884 F.Supp. 823 (S.D.N.Y.1995)). In other words, "an improper motive 'will only invalidate the trusteeship if no other valid motive was present.'" *Id.* (quoting *Mason Tenders,* 884 F.Supp. at 836).

Plaintiff maintains an issue of fact exists as to whether there was substantial evidence to support maintaining the trusteeship. She seeks to raise as an issue that Defendants have not presented evidence in support of imposition of the trusteeship. Curiously, her position that Defendants have not presented evidence is belied by her own vehement attacks on the "veracity" of that evidence submitted by Defendants. For each finding made by the Trusteeship Panel, Plaintiff disputes the inferences drawn by the panel.

██ It is not the role of this Court, however, to review the trusteeship panel's decision *de novo* and weigh the disputed evidence. Various inferences may indeed be drawn from the evidence presented to the Trusteeship Panel. Nonetheless, Plaintiff's contrary view of the evidence relied upon by the Panel does not negate the existence of that evidence. *See e.g., Massey v. Int'l Bhd. of Teamsters,* Case No. 03 C 2410, 2003 WL 21011823 (N.D.Ill. May 5, 2003) (court refused to impute bad faith based on plaintiffs' evidence that General President's decision may have been based on incorrect facts).

All parties present introduced evidence to the Trusteeship Panel. Not only did Plaintiff have the opportunity to cross-examine witnesses, but she also had time after the hearing to view the voluminous documentary evidence and to submit a post-hearing brief.[15] After the hearing, the Panel found several grounds to support its Recommendation that the trusteeship be continued, including: work in the movie industry was assigned arbitrarily based on personal and political loyalties, the movie division was not operated in a democratic manner, collective bargaining agreements with substandard contract provisions were negotiated, and Plaintiff retaliated against those who opposed Lark as well as those who cooperated in the investigation of Local 390. General President Hoffa adopted these findings as his own, and the findings constitute evidence that the trusteeship was maintained for a proper purpose. *See Morris,* 2001 WL 1231741 at *7.

██ Thus, even if Plaintiff's suggested inferences drawn from the same evidence are reasonable, they do not serve to create a factual issue concerning whether General President Hoffa's decision was supported by substantial evidence and is therefore

---

**15.** Plaintiff filed suit rather than submit additional briefing to the Trusteeship Panel.

entitled to deference. *Local No.2000,* 284 F.Supp.2d at 692; *Crane,* 848 F.2d at 713; *see also Bechtel Constr. Co. v. Sec'y of Labor,* 50 F.3d 926, 933 (11th Cir.1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Moreover, General President Hoffa's stated reasons for continuing the trusteeship fall squarely within the purposes identified in 29 U.S.C. § 462. Although Plaintiff disputes the facts Defendants relied upon for continuing the trusteeship, she has failed to raise an issue of material fact that there did not exist a proper purpose for the trusteeship. *See Serv. Employees Int'l,* 230 F.Supp.2d at 1105 (finding that defendant was entitled to summary judgment if reason for imposing trusteeship was proper and plaintiffs could not raise triable issue of fact as to existence of that purpose). Given that General President Hoffa's decision was supported by substantial evidence for which no material issues of fact exist, Plaintiff has failed to show clear and convincing evidence that the reasons given were a mere pretext for accomplishing an improper purpose.

*b. Plaintiff has not met her burden of showing that the trusteeship was imposed in bad faith.*

Plaintiff may also withstand an adverse summary judgment by presenting facts to support a finding that the trusteeship was imposed in bad faith. In support of her Opposition to Defendants' Motion for Summary Judgment, Plaintiff submitted three affidavits and supporting exhibits. Plaintiff summarizes her evidence of bad faith for the implementation of the trusteeship as follows:

> The temporal proximity of the declaration of an emergency at the same time the fixed disciplinary proceedings were abandoned, the attempts to coerce witnesses against plaintiff, the reliance only on the tainted RISE reports rather than a review of all the available evidence, including Local 3 90's reports and the recanted testimony of witnesses, the retaliatory recommendation of charges against witnesses in plaintiff's favor, the communication of internal "confidential" IRB memoranda as to plaintiff's guilt and the need to bar her from office, the vetting of "adequate" sanctions for plaintiff's conduct before any hearing of charges against her, the assignment of the IBT Legal Department's staff attorney who authored the charges against plaintiff to sit as counsel to the hearing panel, the assignment of W.C. Smith (who had been instructed to find plaintiff guilty of the charges) to the trusteeship hearing panel, the disparate treatment of plaintiff versus International Representative Ron Schwab, hearing panel member Robert Belans (see Lark Affidavit concerning his "purposeful" contact with Nelans) and Local 390 member John Massa, and the lack of substantial evidence for any of the charges, taken individually or in the aggregate, demonstrate that the imposition and maintenance of the trusteeship was not in good faith.

(Pl.'s Mem. Opp. at 11) (citations omitted).

■ The only discernible argument that the undersigned can distill from Plaintiff in her Response and at oral argument is that the alleged bad faith conduct relating to the aborted internal disciplinary proceedings tainted the alternative means (of a trusteeship) used by the General President to remove Plaintiff from office. In other words, Plaintiff suggests that bad faith may be imputed to the trusteeship proceedings from the bad faith associated with the internal disciplinary proceedings.

According to Plaintiff's affidavit, Robert Belans admitted that a predetermined

scheme to find her guilty of the disciplinary charges existed. Even if Robert Belans' statement is true, however, Robert Belans was not a member of the Trusteeship Panel. Belans' statement relates only to the disciplinary charges, and the disciplinary hearing that was eventually cancelled. The only direct link between the allegedly tainted disciplinary panel and the trusteeship panel is that William C. Smith, III served on both panels. There is no evidence, however, that William C. Smith, III was instructed, along with Robert Belans, to find Plaintiff guilty of her disciplinary charges or to vote to approve a continuation of the trusteeship as a means of accomplishing the same objective. The overlap of panel member Smith in both the disciplinary and trusteeship proceedings does not give rise to clear and convincing evidence of a material issue of fact that the trusteeship proceedings were "tainted."

At oral argument, Plaintiff's counsel suggested both panels' members' were appointed by the General President. However, Plaintiff admits that Belans never explained *who* instructed him to find Plaintiff guilty of the disciplinary charges, and thus his alleged admission cannot be used to establish bad faith motives of the General President. *See e.g., Local Union 2000*, 284 F.Supp.2d at 693 (finding plaintiffs failed to present evidence of bad faith when they only presented "the conclusory, hearsay presumptions of some members and officers as proof.").

The suggestion of the "taint" on the trusteeship proceedings is also supported, according to Plaintiff, by the fact that the attorney who drafted the disciplinary charges against Plaintiff served as counsel

to the Trusteeship Panel. This fact does nothing to establish the bad faith motives of the Panel or the General President, as, without more, it requires speculation of what the attorney knew, intended, communicated, or was instructed to do in both proceedings.

Plaintiff also maintains the trusteeship proceedings were tainted because only the "conclusions of the tainted disciplinary proceeding investigative reports" were used to support the trusteeship. These reports allegedly recommend disciplinary charges against witnesses who testified in favor of Plaintiff. Plaintiff further argues that witnesses were manipulated and coerced. The exhibits attached to Plaintiff's affidavit, however, do not support her statements.

The October 22, 2002 Notice provided reasons for the trusteeship which included Plaintiff's alleged association with Clarence, Lark, Jr.—the subject of her disciplinary charges. Thus, with respect to Plaintiff's contention that the Trusteeship Panel relied on "bad" or "tainted" evidence, a hearing was held, wherein Plaintiff had ample opportunity to put on her own evidence and cross-examine witnesses. There is no dispute that she was afforded such an opportunity despite the cancellation of her disciplinary hearing. Moreover, evidence regarding Plaintiff's disciplinary charges was not the only evidence relied upon by the Trusteeship Panel for making its findings.

Even if the disciplinary proceedings prior to the cancelled hearing were tainted and conducted in bad faith, Plaintiff has not presented clear and convincing evidence that such bad faith should be imputed to the trusteeship proceedings.[16]

---

16. Plaintiff maintains that an issue of fact exists as to whether Defendants were engaged in a plan and scheme to charge and convict her of having associated with Lark and that prejudgment of the disciplinary charges

against her denied her a fair hearing on those charges. Plaintiff also asserts an issue of fact exists as to whether the investigation of Local 390, and resulting charges against her, were initiated based on her failure to vote for the

Plaintiff has simply failed to connect the possibly tainted proceedings to the "interested or sinister motive" of General President Hoffa beyond her own speculation and supposition. *See Local 745, 938 F.Supp.* at 1196 (finding that plaintiff failed to show that General President's actions were prompted by interested or sinister motive); *see also Local Union 2000,* 284 F.Supp.2d at 691 ("Conclusory accusations and suppositions are not sufficient to establish bad faith in satisfaction of the clear and convincing evidence standard.").

Moreover, Plaintiff has not provided any authority for the proposition that IBT cannot impose a trusteeship for a statutory purpose in the face of charges that remain unresolved against Plaintiff. The disciplinary charges certainly concerned Plaintiff's alleged association with Lark, as did the Trusteeship Panel's findings. Nonetheless, the Trusteeship Panel made other findings, in addition to the prohibited association, for implementing the trusteeship. Plaintiff has not presented factual issues concerning the existence of a predetermined outcome regarding the charges relating to her administration of the movie industry work.

This Court must examine the General President's good faith with respect to the purposes identified in 29 U.S.C. § 462. *Crane,* 848 F.2d at 713. Plaintiff has failed to present clear and convincing evidence that the General President, in attempting to restore democratic procedures, was not acting in the best interests of the union. Thus, Plaintiff has failed to

raise a triable issue of fact as to whether the trusteeship was implemented in bad faith. *Local Union 2000,* 284 F.Supp.2d at 691 (While a court must determine whether trusteeship was imposed in good faith effort to achieve legitimate goals, it must not substitute its judgment for union official's regarding whether less intrusive remedies are available).

Having failed to show that the General President's decision was not supported by substantial evidence, Plaintiff's conspiracy theory (that the trusteeship was a pretext for obtaining the desired result from the aborted disciplinary hearing) would not invalidate the trusteeship since there is at least one proper purpose for maintaining the trusteeship. *See e.g., Pruitt v. United Bhd. of Carpenters & Joiners of America,* 673 F.Supp. 441, 444–45 (N.D.Ga.1987) *aff'd* 893 F.2d 1216 (11th Cir.1990); *Serv. Employees Int'l,* 230 F.Supp.2d at 1107 (granting summary judgment as plaintiffs failed to prove by clear and convincing evidence that all the reasons given for trusteeship were impermissible); *Morris,* 2001 WL 1231741 at *8. Therefore Plaintiff cannot invalidate the trusteeship by demonstrating it was imposed in bad faith or for a statutorily unauthorized purpose. Counts I through VI alleged claims based on the imposition of the trusteeship in violation of either the International Constitution or the LMRDA. As the trusteeship was validly imposed in accordance with the International Constitution and the LMRDA, these counts of the Complaint fail as a matter of law.

current General President's slate. Thus, the alleged predetermined scheme to remove her from office was made in retaliation for her political opposition to General President Hoffa. These issues, however, relate to Plaintiff's claim that she was denied a fair hearing on her disciplinary charges *via* the imposition of the trusteeship. The evidence proffered by Plaintiff relates primarily to the proceedings

on her disciplinary charges. For these particular issues to become relevant, she must first establish, by clear and convincing evidence, that the trusteeship is invalid. *See e.g.,Morris v. Hoffa,* Case No. Civ. A. 99–5749, 2001 WL 1231741, at *10 (E.D.Pa. Oct. 12, 2001); *Farrell v. Int'l Bhd. of Teamsters,* 888 F.2d 459, 462 (6th Cir.1989).

*3. Plaintiff has Failed to Raise a Triable Issue of Fact as to the Tortious Interference Claim*

In her Complaint, Plaintiff alleged that the Court has pendent jurisdiction over her state law claims "arising out of the same or similar operative facts based upon the Constitution and bylaws of the International brotherhood [sic] of Teamsters and Local 390." (Compl.¶ 1). Count VII, for tortious interference, does not specify the contractual relations that existed between Plaintiff and Local 390, which are the subject of her claim. (*See* Compl. ¶ 87). The undersigned can only conclude that Plaintiff's state law claim for tortious interference in Count VII is based upon the Constitution and Bylaws of the IBT and Local 390.

Plaintiff concedes that her employment as President of the Local 390 is governed by the local union's Bylaws, and that the local union's Bylaws cannot conflict with the provisions of the International Constitution.[17] Thus, if Plaintiff's right to continued employment as President arose out of the Local 390's Bylaws, that right could not be sustained in conflict with the International Constitution.

 Plaintiff's attempt to raise an issue of fact as to Count VIII is contained within a footnote at the end of her Opposition Memorandum. In it, she simply claims her employment contract with the Local 390 is the subject of her tortious interference claim, but does not address Defendant's legal arguments. Plaintiff has failed to submit a copy of the contract giving rise to her right to employment, and thus has failed to present any evidence of a right to maintain her position as President of the Local 390 that is independent from the International Constitution or the Local 390 Bylaws. *See Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812, 814 (Fla.1994) (alleged business relationship interfered with must afford plaintiff existing or prospective legal rights). Whether or not Plaintiff's right to employment was subject to the International Constitution or Bylaws is significant as the undersigned has determined that the trusteeship was presumptively valid. Because the trustee is empowered by the International Constitution to remove officers, Plaintiff could not have been wrongfully removed from office. *See e.g., Dean v. General Teamsters Union, Local No. 406,* No. G87–286–CA7, 1989 WL 223013 (W.D.Mich. Sept. 18, 1989) (finding that plaintiff's tortious interference claim was barred when trustee was empowered under union's constitution to remove plaintiff from office and plaintiff failed to show that employment terms were not subject to constitution).

Plaintiff cannot state a claim for tortious interference because she has failed to establish the existence of a legal right. *Tamiami Trail Tours, Inc. v. Cotton,* 463 So.2d 1126, 1127 (Fla.1985) (identifying elements of tortious interference claim under Florida law); *Wackenhut Corp. v. Maimone,* 389 So.2d 656, 657 (Fla. 4th DCA 1980) (first element requires plaintiff to establish existence of business relationship under which plaintiff has legal rights). Therefore, summary judgment on Count VII is also warranted.

In accordance with the foregoing it is,

---

**17.** Article XXI, Section 1 of the International Constitution regarding Local Unions' Bylaws, states in pertinent part: "Each Local Union shall adopt its own separate Bylaws which must comply, and may not conflict, with the provisions of the International Constitution. Said Bylaws shall designate as the principal executive officer the President, the Secretary–Treasurer, or the Recording Secretary." (Deaner Aff., Ex. G.)

**ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment (D.E.21) is GRANTED.